## In re MARINE MACHINE & CONVEYOR CO.

(District Court, S. D. New York. February 3, 1899.)

BANKRUPTCY—CORPORATION—PRINCIPAL PLACE OF BUSINESS—ADMISSION OF IN-
SOLVENCY—ADJUDICATION.

Where the defendant corporation shut down its manufacturing works
and ceased all business at Warren, R. I., in June, 1898, but continued its
business in New York, where all its executive and banking business had
been done, until the petition was filed in November following, *held*, that
New York was its principal place of business during the preceding six
months, and that the petition was properly filed in this district; *held* also
that an admission of insolvency and willingness to be adjudicated a
bankrupt, as stated in several letters to creditors, signed by the president
of the corporation and authorized by a meeting of a majority of the board
of directors, was sufficient to uphold a petition and to warrant an adju-
dication in bankruptcy, although three nominal directors of the corpora-
tion were not notified of the meeting; it appearing that they had never
taken any part in the meetings of the directors, nor given any attention
to its affairs, and were prosecuting suits against the corporation under
which they had attached the principal part of its property.

In Bankruptcy. Adjudication of corporation.

Hector M. Hitchings, for petitioning creditors.
James M. Ball, for the corporation.
Frederick L. C. Keating and Joseph Kling, for opposing creditors.

BROWN, District Judge. The Marine Machine & Conveyor Com-
pany was incorporated as a manufacturing corporation under the laws
of the state of Rhode Island on February 3, 1897, for the manufacture
of marine machinery and other purposes. The corporation acquired
certain buildings and real estate at Warren, R. I., where it subse-
quently carried on the manufacturing branch of its business. The
general office of the corporation was in New York City, where its
officers were to be found, its books kept, its purchases and sales mainly
effected, and all its banking business transacted, and where all the
meetings of the directors, subsequent to the first, were held.

On June 11, 1898, the company, becoming embarrassed, closed its
works at Warren, R. I., and discharged all its employés except one
watchman and a local superintendent, who were retained for the
preservation of the property. Its office in New York was continued,
where the meetings of its directors continued to be held and its busi-
ness in liquidation was transacted.

In September and October a number of suits were commenced
against the company in Rhode Island, in which all its property there
was attached. On the 29th of October, 1898, in answer to letters of
inquiry by creditors, several letters were addressed to its creditors,
signed by the president in the corporate name, saying that the com-
pany was unable to pay its debts and was willing to be adjudged a
bankrupt upon that ground. This was done by authority of the board
of directors, who on that day had passed a resolution to the same

effect; and these creditors afterwards on the 9th day of November, 1898, filed a petition in this court, praying that the company be adjudged bankrupt on the ground above stated, and alleging that its principal place of business, during the greater portion of the six months preceding, was at the city of New York and within this district. A subpœna was duly served on the company, who filed no answer. Several creditors, however, who had commenced suits in Rhode Island, obtained judgments and issued executions thereon, filed answers to the petition, alleging that the principal place of business was not in New York City, but in Warren, R. I., and alleging that they had no information or belief as respects the other allegations in the petition. The cause was brought to hearing before me, no jury being demanded.

1. As to the first objection, I find that this court has jurisdiction, for the reason that the evidence shows that during the greater part of the six months prior to filing the petition on November 9, 1898, the corporation did no business at Warren, R. I., its works being shut down and its business there stopped, but did have a place of business and did transact business in the city of New York; and that its principal place of business during most of the preceding six months was therefore within this district; so that this proceeding is properly within the jurisdiction of this court.

2. I find that the letters and resolution above stated are each and every of them severally acts of bankruptcy on the part of the company, within subdivision 5 of section 3 of the bankrupt act; because each of them "admitted in writing the company's inability to pay its debts and its willingness to be adjudged a bankrupt on that ground."

It is objected that the meeting of the board of directors on the 29th of October, at which the resolution in question was adopted and the president authorized to make this announcement to creditors, was not in law the act of the corporation; because three members of the board of directors were not notified of that meeting. The three directors referred to were called as witnesses, and each denied that he had received any notice of the meeting. It further appeared, however, that these three directors had never given any attention whatsoever to the affairs of the company; had never attended any meeting subsequent to the first in February, 1897, and that all of them had promoted, and were interested in, suits against the company in Rhode Island, and the attachments against its property, and had caused those attachments to be issued several weeks before the letters and resolution referred to; and that the meeting in New York at which the resolution was passed and the letters authorized, was attended by four of the directors, constituting a majority of the board, and by all of the officers of the corporation. In other words, this resolution was passed by a majority of the directors, at a meeting held at the same place and in the same manner that all of the meetings of the directors had been held, and all its business conducted for nearly two years, without dissent or question by the other directors or by any of the stockholders. No by-laws were produced in evidence; but from such long-continued acquiescence from the beginning, the four acting members of the board, being a majority, must be inferred to be author-

ized to represent the whole board, as much as if a by-law to that effect had been adopted and put in evidence.

The bankrupt act, moreover, requires no technical form of proof of assent by a corporation, any more than by an individual; but only that the admission and consent be in writing; and this would here be evidenced by the letters alone. But the proof here goes much further than that, in showing the deliberate action and authority of the board of directors, i. e. the same board that without question had conducted the entire business of the corporation from the beginning. The other three directors, as I have said, not only acquiesced during the whole history of the company in the majority exercising the functions of the board, but by their own adverse proceeding in attaching the company's property in suits which they have since prosecuted to judgment and execution in the attempt to secure a preference condemned by the bankrupt law, they have virtually, if not technically, disqualified themselves from any proper or impartial consideration of the resolution in question. In my opinion, they are in no situation to question the resolution adopted, or to set up the defense that the assent was not given in a lawful manner or by authority of a competent board, even if this defense had been specifically set up in the answer, though that is not done.

The petitioners are entitled to the adjudication prayed for, with costs.