BURDICK v. DILLON et al.

In re MATTHEWS CONSOLIDATED SLATE CO.

(Circuit Court of Appeals, First Circuit. February 23, 1906.)

No. 621.

**1. BANKRUPTCY—JURISDICTION—CORPORATIONS.**

Where a corporation operating factories, mills, or mines in various states has a principal office, from which supreme direction and control are exercised over all its business and property, and its selling and collecting are done, where its directors meet, its books of account are kept, and its correspondence conducted, such office is its principal place of business, within the meaning of Bankr. Act July 1, 1898, c. 541, § 2, cl. 1, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421], and it is subject to bankruptcy proceedings in that district.

**2. SAME—PRINCIPAL BUSINESS.**

Where a corporation is engaged in a business consisting of mining and manufacturing and selling the product, such business in the aggregate exceeding any other business in which it is engaged, it is subject to adjudication as a bankrupt, under Bankr. Act July 1, 1898, § 4b, as amended in 1903 (Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 683]), and it is immaterial which branch is considered its principal business.

[Ed. Note.—What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

**3. SAME—CONSTRUCTION OF STATUTE—"MINING" INCLUDES QUARRYING.**

The word "mining," in Bankr. Act July 1, 1898, § 4b, as amended in 1903 (Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 683]), is used in a broad sense and includes quarrying as of slate from an open quarry.

Appeal from the District Court of the United States for the District of Massachusetts.

Selden Bacon (Lawrence Bond, on the brief), for appellant.

Henry V. Cunningham (Melvin O. Adams, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

BROWN, District Judge. This is an appeal by an answering creditor from a decree of the District Court for the District of Massachusetts adjudging the Matthews Consolidated Slate Company bankrupt. The principal questions raised are: (1) Whether the principal place of business of the Matthews Consolidated Slate Company was in the District of Massachusetts; and (2) whether the said company was engaged principally "in manufacturing, trading, * * * mining, or mercantile pursuits," within the meaning of section 4b of the bankruptcy act as amended by Act Feb. 5, 1903, c. 487, § 3, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 683].

The corporation was organized under the laws of New Jersey. Its principal office was in Boston. This was the executive office and selling agency. There the directors met, the books of account were kept, the general correspondence was conducted, the great bulk of sales was negotiated, the bills were sent out, and payments received.

The principal banking was done in Boston. Supreme direction and control were exercised from the Boston office.

It owned or operated slate quarries in Vermont, in New York, and a slate mill in New York. Its product of roofing slate and structural slate was principally produced and stored in the states of Vermont and New York.

It is the appellant's contention that the principal place of business was at the place where the quarries and mills were located, and where the working operations were conducted, rather than at the Boston office, where supreme direction and control were exercised and the bulk of sales was negotiated. To support this contention the appellant cites In re Marine Co. (D. C.) 91 Fed. 630; Dressel v. Lumber Co. (D. C.) 107 Fed. 255; In re Elmira Steel Co. (D. C.) 109 Fed. 471. No one of these cases, in our opinion, is an authority for the appellant's contention, as the facts in each case are essentially dissimilar from the facts in the present case.

We are of the opinion that when a corporation operating factories, mills, or mines in various states, has a principal office where business is transacted of the character of that conducted at the Boston office of the Matthews Consolidated Slate Company, such principal office, rather than a factory, mill, or mine, according to ordinary understanding and speech, as well as according to the intent of Congress, constitutes the "principal place of business," within the meaning of the bankruptcy act. Not only is this the natural interpretation, but it seems to us the only practical interpretation; for, since there can be but one principal place of business, if regard is paid to the amount of property owned or kept in a particular jurisdiction, or to the amount of product there turned out, or to the number of workmen employed, it might follow that the inquiry would be, Which is the largest mine or factory? a question having little relation to the purpose of administering the assets.

We agree so fully with the reasoning and conclusion of the District Court that it is unnecessary to add anything further to the opinion of that court upon the first proposition.

In considering the second question—whether the corporation's business was of a kind within section 4b of the bankruptcy act as amended—we find it unnecessary to determine whether the corporation was principally engaged in manufacturing, principally engaged in mining, or principally engaged in mercantile pursuits, for we think it clear that a corporation engaged in a business consisting of manufacturing, mining, and mercantile pursuits, which in the aggregate exceed business of a kind not within the statute, is within the bankruptcy act. In such a case it is not necessary to determine in which one of the enumerated operations or pursuits the corporation is principally engaged.

It is the contention of the objecting creditor that the corporation was principally engaged in the quarrying of slate, and therefore was not within any of the classes of corporations enumerated in the statute. It is contended that, in business parlance and in ordinary speech, mines do not include quarries. Corporation acts of various

states, specifying quarrying and mining as different businesses, are referred to, and various judicial decisions are cited, in which distinctions are made between mines and quarries.

We are of the opinion, however, that while, for many purposes, quarrying and mining are to be distinguished, it was not the intention of Congress, in making the amendment, to draw distinctions based upon the character of the minerals, or upon the mode of working to obtain the minerals.

Having regard to the purposes of the bankruptcy act—the administration of the assets of insolvents—it is very clear that the reasoning of the opinion in Armstrong v. Lake Champlain Granite Co., 147 N. Y. 495, 506, 507, 42 N. E. 186, 49 Am. St. Rep. 683, is not controlling. In determining whether opening granite quarries to the destruction of the surface was permissible under a grant giving the right to mine for minerals and ores, considerations were presented which are not before us in construing the terms of the bankruptcy act.

In White Mountain Paper Co. v. Morse & Co., 127 Fed. 643, 62 C. C. A. 369, we said:

"Statutes of this general class are not construed in a literal or narrow way, but, like customs legislation, they are held as addressing themselves to the general purpose for which they were enacted."

The term "mining" has a well-recognized usage in a sense broad enough to cover not only subterranean workings for the extraction of minerals of all kinds, including stone, but open workings or quarries.

"The art of mining consists of those processes by which useful minerals are obtained from the earth's crust. This definition is wider than what is popularly known as mining, for it includes not only underground excavations, but also open workings." Enc. Britannica (9th Ed.) vol. 16, p. 440.

"The methods of mining will be briefly outlined under the topics—A. Surface deposits; B. Underground deposits. * * *

"Surface Deposits. When a mass of stored useful material, metalliferous or otherwise, is found on or near the surface, the first step is to uncover it. * * * In quarries of building stone, the decomposed rock is blasted off and removed." The New International Enc. 1905, vol. 12. p. 343.

"Mining in its widest sense is the winning of useful minerals, or metals when the latter are found native. Among the useful minerals are included, by statisticians, mineral oils, natural gas, mineral springs, and building stones, which are included by the United States Geological Survey in its report of the product of the mineral industry of the United States. * * *

"The methods of mining pursued depend upon the location of the deposit, the character of the mineral, its value, the nature of the rock in which it is embedded, and the extent and position of the deposit. When the mineral is exposed at the surface, or is covered only by a shallow layer of soil, quarrying is resorted to." The Universal Enc. (Appleton's, 1900) vol. 8, p. 143.

It is not necessary to make an exhaustive examination of the books upon this subject. One which comes to hand, entitled "Mining. An Elementary Treatise on the Getting of Minerals," by Arnold Lupton, begins:

"The term 'mining' is often employed to describe all engineering works below the surface of the earth, but in this treatise the term will only include those underground operations which are made in the search for, or the extraction of, minerals."

At page 149 it is said:

"One method of working is quarrying, or open holes. Here a hole, or wide trench, is dug down to the seam to be wrought, which is then excavated and thrown into wagons; the strata above being thrown in a heap behind as the work advances. * * * The soil is first of all removed, and is subsequently relaid on the waste heap so that the ground which has been mined can be restored to a state fit for agricultural purposes. This method of mining has been largely employed in most of the coal fields of Great Britain, for seams of coal and ironstone where they crop up to the surface, and at depths not often exceeding 30 feet."

At page 181 it is said, in relation to slate workings:

"The mine (quarry) is in several divisions, so that the whole cannot be seen at a glance."

In "Economic Mining," by C. G. Warnford Lock, at page 163, it is said:

"The mining of asbestos is wholly conducted by opencast or quarrying."

Page 165:

"The Italian mineral lies in beds and pockets which are mostly reached by open quarrying. * * * "The lumps of mineral, as they are taken from the mine, consist of bundles of hard fibers," etc.

At page 233, referring to diamond mines, it is said:

"The original system of mining the Kimberley ground, namely by open quarry, was the best for a depth of say 200 feet, because the mine could have been worked in no other way while the claims were operated by individual owners."

The use of the word "mine" to include open quarrying as well as subterranean workings, and the extraction of stone or clay and non-metalliferous minerals as well as metalliferous minerals, is also recognized by judicial decisions. In Midland Railway Co. v. Robinson, 15 App. Cas. 19, 30, Lord Herschel said:

"I have already indicated that the widest construction ought to be given to the word 'mines' which is possible without improperly straining the language used. Is there anything in the terms of the enactment compelling the narrower construction for which the appellants contend? I think not. Applying one's self to the consideration of the word 'mines' apart from the document or context in which it is found, I cannot think that its natural meaning imports such beds or strata of minerals only as are ordinarily got by underground work. If aid is sought from the lexicons, and the definitions there given are received, I do not think that they afford support to such a construction. Doctor Johnson, I may observe, defines a 'quarry' as a 'stone mine.'"

While the Supreme Court, in Marvel v. Merritt, 116 U. S. 11, 6 Sup. Ct. 207, 29 L. Ed. 550, quoted Webster's definition of a mine as "a pit or excavation in the earth from which metallic ores, or other mineral substances, are taken, distinguished from the pits from which stones only are taken, and which are called quarries," the decision held merely that the word "mineral" in the customs statute in question was used in a popular sense. So far as the issue before us is concerned, that case, if it has any bearing, is superseded by Northern Pacific Railway Co. v. Soderberg, 188 U. S. 526, 23 Sup. Ct. 365, 47 L. Ed. 575. In that case, the Supreme Court said (page 530 of

188 U. S., page 367 of 23 Sup. Ct. [47 L. Ed. 575]), in discussing the term "minerals":

"Nor do we approximate much more closely to the meaning of the word by treating minerals as substances which are 'mined,' as distinguished from those which are 'quarried,' since many valuable deposits of gold, copper, iron, and coal lie upon or near the surface of the earth, and some of the most valuable building stone, such, for instance, as the Cæn stone in France, is excavated from mines running far beneath the surface. This distinction between underground mines and open workings was expressly repudiated in Midland Ry. Co. v. Haunchwood Co., L. R. 20 Ch. Div. 552, and in Hext v. Gill, L. R. 7 Ch. App. 699."

Upon a careful consideration of the reasoning of the Supreme Court in this case, it would seem impossible to draw an unqualified distinction between slate and other minerals, in considering whether the getting out of slate from natural beds is properly denominated "mining." As the word "mining" in the statute would doubtless include placer mines, in which the workings are open, we think it impossible to say that the question whether an enterprise is mining or not can be determined by an inquiry as to whether the workings are open or underground. If we were to make distinctions between classes of minerals and modes of working, we should be led into many useless distinctions having no relevancy to the purpose of Congress in passing the bankruptcy act. Certain slate deposits are worked partly as open quarries and partly by horizontal tunnels underground. Would it be practical or useful to determine whether a slate company thus getting its product was principally engaged in mining, by computing the comparative amount of its open workings and subterranean workings?

We are of the opinion that Congress used the words "mining" and "manufacturing" in their broad sense; that the terms are not necessarily mutually exclusive; that, for any of the purposes of Congress in passing the bankruptcy act, distinctions between the classes of minerals and methods of working are immaterial; and that an attempt to distinguish between "mining" and "quarrying" would lead to no useful result.

In determining that the bankrupt's quarrying operations were within the meaning of the word "mining" as used in the bankruptcy act, we do not decide, however, that the corporation was not principally engaged in "manufacturing," within the meaning of the statute. The product of the corporation was roofing slate and structural slate. The latter is conceded to be manufactured slate. Roofing slate was the principal product. It was prepared, according to the ordinary practice of slate quarrying, by splitting the blocks as they came from the quarry, while yet moist, and by trimming the slates to a uniform size. At certain of the quarries the blocks were sawed by steam power, and the slates were generally trimmed by revolving knives operated by foot power. The product is a final product, ready to be nailed to the roof.

The appellant argues that the splitting and trimming of roofing slate were mere incidents of the quarrying operation. It may be quite as well argued that the quarrying was an incident to the manufacture. See In re Chandler, 1 Lowell, 478, Fed. Cas. No. 2,591.

We have serious doubts whether it is permissible to analyze into its various steps a business in which by labor a fashioned and final product ready for immediate use is produced, and to characterize the business by reference to the most laborious or most expensive step in the final production. It would probably be more reasonable to say that such a project should be treated as a unit, and characterized by the final step of fashioning for immediate use, rather than by the preliminary steps in getting out the material.

It is not necessary, however, to determine if the corporation was engaged principally in manufacturing. The question before us is whether it is within the provisions of the bankruptcy act; and it is enough to say that, if not principally engaged in "manufacturing," it was principally engaged in "mining," and therefore unquestionably within the act.

While we have been led by the careful argument of counsel for the objecting creditor to discuss the second question somewhat more at length than it was discussed in the opinion of the District Court, we entirely agree with the reasoning and conclusion of the District Court.

The decree of the District Court is affirmed, with costs of appeal to the appellees.

Note.—Writ of certiorari was denied by United States Supreme Court, April 30, 1906. See 26 Sup. Ct. 764, 50 L. Ed. ——.