HOME POWDER CO. et al. v. GEIS et al.

In re LINCOLN MIN. & MILL. CO.

(Circuit Court of Appeals, Eighth Circuit. March 22, 1913.)

No. 3,674.

1. BANKRUPTCY (§ 63*)—ACTS OF BANKRUPTCY BY CORPORATION—POWER OF BOARD OF DIRECTORS.

Whether the board of directors of a corporation has the authority to admit its inability to pay its debts and its willingness to be adjudged a bankrupt, which constitutes an act of bankruptcy under Bankr. Act 1898, c. 541, § 3a (5), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), depends on the laws of the state in which it is incorporated. If, as is the case in Arizona, the state law is silent on the subject, the directors, under the general law, have authority to make a general assignment of the property of the corporation for the benefit of its creditors, which carries with it the power to consent to its bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 63.*]

2. BANKRUPTCY (§ 63*)—CORPORATIONS—ADMISSION OF INSOLVENCY.

The fact alone that two of the directors of a corporation, who voted for a resolution admitting its inability to pay its debts and its willingness to be adjudged a bankrupt, and whose presence was necessary to make a quorum, were creditors of the corporation, does not invalidate the action of the board.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 63.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. BANKRUPTCY (§ 76\*)—CORPORATIONS—DIRECTORS AS PETITIONERS.**

Nor were such directors disqualified from joining in a petition as creditors based on their action as directors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 50, 56, 97, 99, 100; Dec. Dig. § 76.\*]

**4. BANKRUPTCY (§ 16\*)—JURISDICTION—"PRINCIPAL PLACE OF BUSINESS" OF CORPORATION.**

A mining company, incorporated in Arizona, and licensed to do business in Missouri, acquired a lease of a mine in the latter state, where all of its mining business was transacted, although its managing officers resided in Chicago, and its directors' meetings were held there. *Held*, that its principal place of business" was in Missouri, within the meaning of Bankr. Act July 1, 1898, c. 541, § 2 (1), 30 Stat. 545 (U. S. Comp. St. 1901, p. 3421). and that the court of that district had jurisdiction to adjudge it a bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 20; Dec. Dig. § 16.\*

For other definitions, see Words and Phrases, vol. 6, pp. 5559–5560.]

Appeal from the District Court of the United States for the Western District of Missouri; Smith McPherson, Judge.

In the matter of the Lincoln Mining & Milling Company, bankrupt. The Home Powder Company and others appeal from an order of adjudication. Affirmed.

Hiram W. Currey and George Vest Farris, both of Webb City, Mo., for appellants.

Hugh McIndoe and A. W. Thurman, both of Joplin, Mo., for appellees.

Before HOOK and SMITH, Circuit Judges, and VAN VALKEN-BURGH, District Judge.

SMITH, Circuit Judge. The Lincoln Mining & Milling Company was incorporated under the laws of Arizona in October, 1907, and in October, 1908, it was licensed to do business in Missouri. The company acquired a lead and zinc mine by lease and constructed a mill at Duenweg, Jasper county, Mo., and the management of this mine and mill constituted the sole business of the company. The company was engaged in carrying on these lines of business from its organization until about June, 1910, when it closed down. Shortly thereafter its property was attached by certain of its creditors, including the Home Powder Company. Later, and on August 16, 1910, a called meeting of its directors, of which meeting all the directors were notified, was held in Chicago, Ill. It was attended by five of the eight directors, and a preamble was adopted stating that the company was unable to pay its debts and had been obliged to shut down its plant at Duenweg, and by a resolution, which was entered at large on the company's records, it admitted its inability to pay its debts and its willingness to be adjudged a bankrupt on that ground. August 27, 1910, Albert J. Geis, A. W. Van Hafften, and Herman B. Meyers filed a petition as creditors of the company, alleging that it had admitted in writing its inability to pay its debts and its willingness to

be adjudged a bankrupt on that ground, and asking that it be so adjudged. The company answered, admitting the allegations of the petition; but certain creditors, including the United Iron Works and the Southwest Supply Company, answered, contesting the proceedings upon numerous grounds. The whole matter was referred to a master, who reported in favor of the petitioners. Exceptions were filed by the Home Powder Company, the United Iron Works, and the Southwest Supply Company. The court confirmed the report of the master, adjudged the company a bankrupt, and the Home Powder Company, the United Iron Works, and the Southwest Supply Company appeal.

Geis and Van Hafften were directors, and attended the meeting in question of the board, and as only a bare quorum was present, counting them, if they or either of them were disqualified, there was no quorum present.

[1] It was originally contended that there was no power in the board of directors, as distinguished from the stockholders, to commit the act of bankruptcy by admitting the inability of the corporation to pay its debts and its willingness to be adjudged a bankrupt. The law requires that the corporation admit in writing its inability to pay its debts and its willingness to be adjudged a bankrupt on that ground, and in every case the question is one of authority of the agent, which must be determined by an examination of the special charter or the general laws of the state of the residence of the corporation and the articles of incorporation and the by-laws lawfully adopted. The residence of the corporation is always the state where incorporated. Thompson on Corporations (2d Ed.) § 490. The question, therefore, is whether the directors were authorized to make the admission for the corporation by the laws of the state of the residence of the corporation. In this case that was Arizona.

While all the authorities agree to this, it has been held that the laws of Massachusetts and Oregon do not confer such authority upon the board of directors. In re Bates Machine Co. (D. C.) 91 Fed. 625; In re Quartz Gold Mining Co. (D. C.) 157 Fed. 243, affirmed under the title of Van Emon et al. v. Veal, 158 Fed. 1022, 85 C. C. A. 547. On the other hand, it has been held that by their laws New York, Pennsylvania, Wisconsin, New Jersey, and Rhode Island authorize the board of directors to make these admissions. In re C. Moench & Sons Co., 130 Fed. 685, 66 C. C. A. 37; In re Lisk Mfg. Co. (D. C.) 167 Fed. 411; Cresson & Clearfield Coal & Coke Co. v. Stauffer, 148 Fed. 981, 78 C. C. A. 609; In re T. L. Kelly Dry Goods Co. (D. C.) 102 Fed. 747; In re Mutual Mercantile Agency (D. C.) 111 Fed. 152; In re Marine Machine & Conveyor Co. (D. C.) 91 Fed. 630.

While there is thus a disagreement between the courts as to the conclusion, there is no difference of opinion as to the principle which governs in such cases. The question in every case is: What authority had the directors, as distinguished from the stockholders, in the home of the corporation? Loveland on Bankruptcy (4th Ed.) § 136. It is not to be presumed that there will be found in the gen-

eral laws of the state, or in the articles of incorporation or by-laws, any express provision authorizing such admission; but under the general law the board of directors or trustees of a corporation have the power to authorize execution of an assignment of all property of the corporation for the benefit of its creditors, when such a step is advisable, unless such an assignment is prohibited by law, the articles, or by-laws. Clark & Marshall on Private Corporations, par. 691; Thompson on Corporations (2d Ed.) § 6138.

There is no law in Arizona prohibiting such an assignment, and the power to make such transfer carries with it the power to admit the corporation's inability to pay its debts and declare its willingness to be adjudged a bankrupt. In re C. Moench & Sons Co., 130 Fed. 685, 66 C. C. A. 37; Loveland on Bankruptcy (4th Ed.) § 158. There being no law of Arizona prohibiting a board of directors from making a general assignment, it follows such board may without consent of the stockholders make the admission that the corporation is unable to pay its debts and express its willingness that the corporation be adjudged a bankrupt.

[2] It is manifest that, of the five members of the eight·who constituted the board who were present when the resolution was adopted, Van Hafften and Geis, who subsequently became petitioning creditors, were necessary to constitute a quorum. The action of the board was unanimous, with a quorum present, and the mere fact that two of those present were creditors, and at the time intended to file a petition, would not disqualify them to vote upon the resolution. The company was hopelessly insolvent, and the resolution had no direct bearing upon the claims of Van Hafften and Geis. It does not appear why the other directors, who were notified, did not appear. It may be that the board thus made up was disqualified to act upon the claims of Van Hafften and Geis. That we do not determine; but there is nothing in the fact that these two men were or claimed to be creditors to disqualify them from voting on a resolution that the company could not pay its debts and was willing to be adjudged a bankrupt. The board of directors was authorized to adopt the resolution and legally did so.

[3] It is next contended that Van Hafften and Geis were disqualified to act as petitioners in an action dependent on their action as directors; but this position seems without force. If the effect of their conduct was to give them a preference, there would be some merit in this suggestion; but many of the authorities say it is not only within the power, but it is the duty, of the directors to make an assignment when the corporation is hopelessly insolvent, and so it may well be said it was not only within the power, but was the duty, of the directors to adopt the resolution in question, and thus secure a sequestration of the property of the corporation for the equal benefit of all the creditors, as distinguished from the exclusive application of it to the payment of some one or more creditors. This company owed more than $60,000, besides all that is claimed by the petitioners and interveners, and about $7,000 in claims as to which there is not a suggestion of fraud; and if this petition was not filed the Home

Powder Company and others not parties of record would have secured a prior lien upon all its property.

[4] It is next contended that the court erred in holding that there was jurisdiction in the United States District Court for the Western District of Missouri to adjudge the company a bankrupt. It is provided by section 2 of the bankruptcy act that the proper court has jurisdiction to "adjudge persons bankrupt who have had their principal place of business * * * within their respective territorial jurisdictions for the preceding six months or the greater portion thereof," and it is provided by the first section that the word "persons" shall include corporations. It thus becomes a question of fact as to whether the mining company had its principal place of business in the Western district of Missouri for the greater portion of the six months next preceding August 27, 1910.

From a time long prior to the six months next prior to this application up to in June, 1910, all of the tangible property of the corporation was in Jasper county, in the Western district of Missouri. It there had and conducted the mining business for lead and zinc, and there had its reduction works or mill. It is not even contended its principal place of business, within the meaning of the second section of the bankruptcy law, was in Arizona. There is nothing to indicate it had any authority to do business, except in Arizona and Missouri; but it is claimed that its principal place of business was in Chicago, Ill., and reliance is placed upon In re Mathews Consolidated Slate Co. (D. C.) 144 Fed. 724, and Burdick v. Dillon, 144 Fed. 737, 75 C. C. A. 603. On the other hand is cited Tiffany v. La Plume Condensed Milk Co. (D. C.) 141 Fed. 444.

The managing officers lived in Chicago, and there sold considerable stock in the company; but manifestly this was not the principal business of the mining company in a legal sense. The directors' meetings were held at Chicago, except one, which was held at the mine. The work at the mine and mill was doubtless largely under the direction of the officers, who resided at Chicago, who were the principal owners of the company. The proceeds of sales of stock and of some loans were first deposited in the Commercial National Bank at Chicago, but more than $42,000 of these funds were transferred to the First National Bank of Carterville, Jasper county, in the Western district of Missouri. The evidence does not clearly show what was done with this money, but it was doubtless expended in connection with the carrying on of the business of the company. Supported as the contention of the petition is by the finding of the master and the court, and conforming as it does to our own opinion from a reading of the evidence, the finding cannot be disturbed on this contention.

The petitioning creditors each held the note of the corporation. This constituted prima facie evidence of indebtedness, and the most that can be said is that the case thus made was somewhat shaken by the testimony. On this, as on the last point, the master and court both found that the company was indebted to all of the petitioners in

an amount in excess of $500, and with that finding this court cannot, in view of the evidence, interfere.

The order of adjudication is affirmed.