## In re BEIERMEISTER BROS. CO.

(District Court. N. D. New York. November 22, 1913.)

BANKRUPTCY (§ 16*)—ADJUDICATION—JURISDICTION—CORPORATIONS—PRINCIPAL PLACE OF BUSINESS.

The articles of a bankrupt corporation organized in 1904 stated that its principal place of business was in the city and county of New York, in the Southern federal district, and for some time thereafter the corporation had a factory, as well as an office, or place of business for selling its product, keeping books, etc., in New York; but in 1908 it removed its entire plant to Albany, in the Northern district, where all its subsequent business was transacted, except that it continued to rent and maintain an office and salesroom in New York under the management of one of its directors, who was also secretary and resided in that city, using the room to exhibit samples of goods and supply small orders. No meeting of stockholders was ever held in New York, and with one exception all meetings of directors for more than six months prior to the filing of the bankruptcy petition had been held in the Albany office. *Held*, that the corporation's principal place of business was in the Northern district, notwithstanding the provision of its articles, and that the court of that district had jurisdiction of the bankruptcy proceeding against it, under Bankr. Act July 1, 1898, c. 541, § 2, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3420), applicable to corporations and providing that the federal District Courts are invested, within their territorial limits, with such jurisdiction as will enable them to exercise original jurisdiction in bankruptcy and adjudge persons bankrupt who have had their principal place of business within their respective territorial jurisdiction for the preceding six months or a greater portion thereof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 20; Dec. Dig. § 16.*]

In Bankruptcy. In the matter of the Beiermeister Bros. Company, bankrupt. On motion to vacate an order appointing a receiver, and also to vacate the adjudication in the Northern district of New York, for want of jurisdiction. Denied.

Jesse S. Epstein, of New York City, for receiver in Southern district of New York and Greenwich Bank of the City of New York.

Edward Murphy, 2d, of Troy, N. Y. (H. D. Bailey, of Troy, N. Y., of counsel), for bankrupt.

Tracey, Cooper & Townsend, of Albany, N. Y. (B. Jermain Savage, of Albany, N. Y., of counsel), for George Hatt, 2d, receiver.

RAY, District Judge. On the 3d day of November, 1913, certain creditors of the above-named bankrupt, Beiermeister Bros. Company, filed a petition against said corporation in involuntary proceedings in the Southern district of New York, and without notice on the same day obtained an order appointing Wm. Henkel, Jr., receiver of the property of the alleged bankrupt in such district. On the 4th day of November, 1913, the above-named Beiermeister Bros. Company filed a voluntary petition in bankruptcy in the Northern district of New York, and adjudication followed as matter of course. In that proceeding Geo. Hatt, 2d, of the city of Albany, was on the same day ap-

pointed receiver of the property of the bankrupt and took possession of the property in the Northern district. In the involuntary petition filed in the Southern district of New York it was claimed or alleged that the principal place of business of the alleged bankrupt was in the Southern district of New York. In the voluntary proceeding the petition executed by the corporation pursuant to a resolution of the board of directors alleged and set out that the principal place of business of the corporation was and for several years had been in the Northern district of New York. When the corporation was organized or incorporated the principal place of business was in the articles of incorporation stated to be at a certain place in the city and county of New York, which is in the Southern district. For some time the corporation (incorporated in 1904) had a factory in the city of New York, as well as an office or place of business for selling its product, keeping books, receiving and sending mail, etc. It also had a bank account in the city of New York, and most or all of its bills, letters, etc., were dated at New York. It had letter heads reading:

Telephone 939 Stuyvesant.                         Factory, Albany, N. Y.

Beiermeister Brothers Co.

(Incorporated 1904)

Importers and Manufacturers.   Ladies' Wear, Collars and Cuffs, 18, 20, 22, 18th St., Between Broadway and 5th Avenue.

New York, —————, 19—.

It had bill heads reading:

New York, —————, 19—.

M—————————————————————————————————————

To Beiermeister Bros. Co., Dr.

18, 20, 22, E. 18th St.

Waists.

Blouses.                                               Dresses.

Terms:

Five years ago this corporation removed its entire manufacturing plant to the city of Albany, in the Northern district of New York, where all of its manufacturing has been done. There it has rented a plant for this purpose, and at the plant it had an office for the transaction of business. It also kept and had a bank account in one of the banks of the city of Albany. At the same time the corporation changed the nature and character of its business from contract manufacturing to manufacturing on its own account. The corporation has since rented and maintained an office and salesroom in the city of New York (18 East 18th street) under the management of William H. Peabody, one of the directors, who is also the secretary of the corporation, who resided in that city. This salesroom was maintained for the purpose of exhibiting samples of goods and supplying small orders. For some years the officers and directors had been Fred. Beiermeister, president, who at all times has resided in the city of Troy, a short distance from the city of Albany, in the Northern district of New York, Frederick J. Beiermeister, who at all times has resided in the city of Albany, Northern district, and said Peabody. No meeting of the stock-

holders had ever been held in the city of New York, and with one exception all the meetings of the directors of the corporation for more than six months prior to filing its petition have been held at the Albany office, where they have met for the transaction of the business of the corporation at least twice each month. The only directors' meeting held in the city of New York during such time was a special meeting for the purpose of entering into a contract with Lichtenhein & Stern, bankers of New York City, notice of which meeting was waived by all the directors. The debts of the bankrupt aggregate about $50,000, and the assets are inventoried at some $45,000, all of which, except some fixtures in the New York office and some samples of goods, all worth not to exceed $2,500, are in the Northern district of New York at the Albany factory.

Probably two-thirds of the creditors in amount reside in the Southern district of New York. Something like $20,000 is owing to parties in Albany and vicinity. There is no contest over the claims of any of these creditors. It was stated on the argument by those representing the New York City petitioning creditors that it was their purpose to remove these assets to New York City for sale there and abandon the Albany plant now being run for the purpose of completing garments cut out and saving a large amount of material that otherwise will be a dead loss. For some years substantially all deliveries of goods manufactured and sold have been made from the factory at Albany, and substantially all goods purchased have been delivered there. Sometimes small packages purchased at different places in New York City have been taken to this New York office, put in one large package, and sent on to Albany. Some of the books of the corporation have been kept at the New York office, but all the facts and information entered and contained therein relative to the sale and shipment of goods has been obtained from the books at the Albany office. It appears from the books of the corporation, which were removed to the Albany office prior to the filing of either petition in bankruptcy, that during the eight months immediately preceding the filing of the petition in bankruptcy the bankrupt had expended in its business for merchandise purchased, rent, labor, and other expenses incident to the conduct of its business the sum of about $180,000, of which there was checked out of the First National Bank of the city of Albany, where the account was kept, more than $120,000. The bankrupt owes said bank over $9,000, and only owes the Greenwich Bank in New York some $2,500. The Northern district creditors request and urge in writing over their own signatures the retention of these bankruptcy proceedings in the Northern district of New York. The New York City creditors in the main by attorneys request and urge that the proceedings be had in the Southern district.

It cannot be denied that the administration of the estate in the Northern district of New York will proceed more rapidly and at a much less expense than is possible in the Southern district. There can be no question that for at least a year last past, and surely for more than the six months last past, the actual, main, and principal place of

business of the bankrupt corporation has been at the city of Albany, in the Northern district of New York, and Fred and Frederick J. Beiermeister, two of the three directors, the other not being found, and principal officers so state under oath, and also state that it was the intent and purpose to change the main and principal place of business to Albany at the time the mode of doing business was changed some years ago. For the year last past, at least, but little business has been done in the city of New York, and this of the character before stated. By section 2 of the bankruptcy act it is provided:

"That the courts of bankruptcy * * * are hereby invested, within their respective territorial limits as now established, or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, in vacation or in chambers and during their respective terms, as they are now or may be hereafter held, to (1) *adjudge persons bankrupt who have had their principal place of business,* resided, or had their domicile within their respective territorial jurisdictions for the preceding six months, or the greater portion thereof," etc.

This applies to a corporation. The language is, *"who have had their principal place of business,"* and this means what it says and refers, not to the place of business mentioned in the articles of incorporation, but to the *actual* principal place of business for the time mentioned. It was not intended to deprive a court of one district of jurisdiction of a corporation doing *all* its business and having *all* its property in that district, and 'also having an office there for the transaction of business, for the reason that the corporation, *when organized,* in its articles of incorporation had *designated* a certain place in some other district as its principal place of business and had not changed such designation. This will be the result if it is held that the place so designated in the articles of incorporation, and not changed by supplementary articles or action, determines the jurisdiction. The actual, principal place of business for the period of time required determines jurisdiction. And General Orders 6 and 7 (32 C. C. A. ix, xi, 89 Fed. v.) do not affect this question. General Order 6 says:

"In case two or more petitions shall be filed *against* the same individual in ·different districts."

And General Order 7 says:

"Whenever two or more petitions shall be filed *by creditors* against a common debtor," etc.

Here two petitions have not been filed *"by creditors* against a common debtor,"* and two petitions have not been filed *"against"* this corporation (same individual). The domicile of this corporation is the state of New York. It is a corporation of the state of New York and jurisdiction of it is given to the bankruptcy court in that district of the state of New York in which the corporation actually had, for the six months preceding the filing of its petition in voluntary bankruptcy, its principal place of business. The corporation is presumed to know where it has had its principal place of business, and when the corporation itself files its petition jurisdiction is conferred on the court where

filed, subject to a showing *in that court* that the principal place of business was or had been elsewhere. No prior creditors' petition filed in another district deprives such court of jurisdiction, or of the power to determine its own jurisdiction over the corporation filing a voluntary petition therein and alleging such district to be the one in which it has and has had its principal place of business for the preceding six months and more. The Supreme Court, in adopting the General Orders referred to, had no such situation in mind, and in no event could it change the bankruptcy act itself as to jurisdiction.

In Burdick v. Dillon et al. (In re Matthews Consolidated Slate Co.) 144 Fed. 737, 75 C. C. A. 603 (C. C. A. 1st Circuit), a New Jersey corporation owned and operated slate quarries in Vermont and in New York and a slate mill in New York. Its product of roofing slate and structural slate was principally produced and stored in the states of Vermont and New York. But its principal office was in Boston, Mass. Here was the executive office and the selling agency. Here the directors met, the books of account were kept, the general correspondence was conducted, the great bulk of sales were negotiated, and from here the bills were sent out and payments received. The principal banking was done in Boston through the Boston office, and "supreme direction and control" were exercised from the Boston office. It was properly and necessarily held that Boston was the principal place of business of that corporation. In this case now under consideration the facts are widely different. Whatever the situation was more than a year ago, for more than the six months last past and during such time the actual supreme direction and control of the corporation has been determined at and exercised from the Albany office, where two of the three directors resided (in effect, as Troy is within 15 minutes' ride of Albany) and where the directors met frequently. Here was the executive office. Here was the factory at which all the manufacturing was done and from which all orders were filled, and here some books were kept, the actual books of original entry, and here, at Albany, the principal banking was done and payments made. In Re Marine Machine & Conveyor Co. (D. C.) 91 Fed. 630, the corporation had shut down its manufacturing plant at Warren, R. I., and for more than six months ceased to do business of any kind there; but it continued its business (not of manufacturing) at New York City, where it had its only office, and where its directors met and its banking was done, etc. It was necessarily held that New York was its principal place of business. It was its only place of business.

In 1 Loveland on Bankruptcy (4th Ed.) 404, it is said:

"The principal place of business of a corporation is usually where the general offices or headquarters are located *without regard to the place named in the charter* as the principal place of business. It is where the *actual business* of the concern is *chiefly* transacted and managed. * * * Where a corporation has several places of business, located in different districts, its principal place of business is where the affairs of the corporation *are actually managed*. This is a question of fact to be determined by the circumstances of each particular case."

Applying this rule, which meets the approval of this court, to the case in hand, and it must be held that the principal place of business of

Beiermeister Bros. Company at the time the petitions referred to were filed was, and that for more than six months prior thereto same had continuously been, at Albany in the Northern district of New York.

The motion to revoke and annul or vacate the order appointing George Hatt, 2d, receiver, is therefore denied, as is the motion to open and vacate the order of adjudication.