In re WORCESTER FOOTWEAR CO.

(District Court, D. Massachusetts. July 10, 1918.)

No. 24800.

BANKRUPTCY ☞16—CORPORATIONS—"PRINCIPAL PLACE OF BUSINESS."

Where a corporation did all of its business with its customers from Worcester, Mass., where its books of account were kept, *held*, that such was its "principal place of business," under Bankruptcy Act July 1, 1898, § 2(1), being Comp. St. 1916, § 9586, although the treasurer had an office in New York, where he kept the record books and stockbook, and although he notified the clerk of the corporation in Maine, where the corporation was organized, and the internal revenue collector, that the corporation had removed to New York.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Principal Place of Business.]

In Bankruptcy. In the matter of the Worcester Footwear Company, alleged bankrupt. Referee's report confirmed, and adjudication ordered.

Jay Clark, Jr., of Worcester, Mass., and Harry T. Talty, of Boston, Mass., for petitioning creditors.

Robert A. B. Cook and Phipps, Durgin & Cook, all of Boston, Mass., for alleged bankrupt.

MORTON, District Judge. The decisive question, and the only one which has been argued, is that of jurisdiction. It turns on whether the alleged bankrupt had its principal place of business within this district for the greater part of the six months preceding the filing of this involuntary petition against it. Bankruptcy Act July 1, 1898, c. 541, § 2 (1), 30 Stat. 545 (Comp. St. 1916, § 9586). The respondent contends that it did not, and that its principal place of business was in New York. The petition was filed on March 21, 1917, so that the period to be considered begins on September 21, 1916.

The facts are not seriously in controversy; they are fully stated in the referee's report. The alleged bankrupt was organized under the law of Maine in February, 1916, to act as a selling company for the Worcester Felt Shoe Company, a Massachusetts corporation, which manufactured shoes and had its principal place of business in Worcester, Mass. Most of the respondent's business consisted of receiving consignments of shoes from the parent company, reselling them to the retail trade, collecting payments therefor, and turning the payments directly over to the other company. Its books were kept by clerks of the Shoe Company, and its officers and employés were also connected with that company. It had no place of business of its own. Until the autumn of 1916 all its business, except selling its goods, was done in the offices of the Shoe Company in Worcester. One Pevear was treasurer of both companies until October of that year, when he was succeeded as treasurer of the respondent by one Russell. Up to this time there can be no doubt that the respondent's principal place of business was in Worcester.

Following Mr. Russell's election as treasurer, he removed the record books and stockbook to his own law office in New York; but the books of account remained in Worcester in the office of the Shoe Company, kept, as formerly, by one of its employés, who was also connected with the respondent. At this time Mr. Russell notified the clerk of the corporation in Maine and the internal revenue collector that the corporation had removed to New York.

On December 26, 1916, the Shoe Company finally closed its doors on account of financial difficulties. Somewhat earlier in that month Mr. Russell had opened a bank account in New York in the respondent's name, the first and only bank account which it ever had. Thereafter such payments as it made by check (numbering about 15 in all) were made from that account. The last merchandise sale by the respondent was made in Worcester, in December, 1916, of goods there in storage. Its subsequent activities consisted in sending out bills for its accounts receivable, which was done in Worcester, in receiving payments thereon, which came to its post office box in Worcester and were received by the treasurer on his visits to Worcester, in arrangements to put out a line of sample shoes, which arrangements were also made in Worcester, and in efforts to straighten out its financial affairs and get a new location, which were carried on by its treasurer and officers wherever they might be. Its books of account were sent to New York in January, 1917, and were kept in the offices of Mr. Russell; but the respondent's business activities were pretty well over by that time.

The respondent's letter heads never gave any other address than that in Worcester. It never had any other post office address, and never held itself out to its trade as doing business anywhere else. So far as appears, orders for goods and remittances in payment for them were always sent to the respondent in Worcester. No business of the respondent was ever carried on in New York, except that in connection with its bank account and its stock and corporate record. Its treasurer, who was its controlling official, resided and had his personal office there; but it does not appear that any directors' meetings were ever held there. The keeping of the record and stock books in New York was of little practical importance, because apparently there were few or no transfers of the stock, and no meetings during the period in question.

In his letter of March 10, 1917, Mr. Russell says:

"But from April, 1916, until the middle of January, 1917, I was in Worcester on an average of from two to four days each week."

He went there to look after the respondent's business. This letter confirms a distinct impression created by the testimony that the respondent was essentially a Worcester concern, all of whose major activities, as long as it had any, were carried on at that place, and that the part of its business which was done from New York was only such as would naturally follow the treasurer wherever he might be located.

It is not easy, nor is it required, to lay down any general rule for determining which one of several places at which a corporation does business is its principal place of business. It is not necessarily where

the manager happens to be located, or the stockbook and recordbook to be kept, although those are significant facts. It is to be gathered from a general survey of the corporation's activities. The decision depends upon a comparison of the activities at each place in respect to their character, importance, and amount. In re Matthews Consol. Slate Co., 144 Fed. 737, 75 C. C. A. 603 (C. C. A. 1st Cir.); Id. (D. C.) 144 Fed. 724; E. & G. Theatre Co. (D. C.) 223 Fed. 657; Collier (11th Ed.) p. 40. In the present case the alternative is Worcester or New York.

From September 21, 1916, to December 26th (when the Shoe Company closed its doors) it seems to me that the respondent's principal place of business was in the office of the Shoe Company in Worcester. This period covers more than half of the six months previous to the filing of the petition. The margin is not large, but it is clear and sufficient.

On the other phases of the case I see no sufficient reason to set aside the findings and conclusions of the learned referee, nor do they call for discussion. His report will be confirmed, and adjudication ordered.