## FITTS v. CUSTER SLIDE MINING & DEVELOPMENT CO.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1920.)

No. 203.

1. **Bankruptcy ⬦⟹49—Disposition of petition of intervention within discretion of court.**

Denial of a motion for further continuance on a petition for leave to intervene in bankruptcy proceedings, and treating the answer thereto and replication as addressed to the petition in intervention tendered therewith, and which set forth the same facts and proceeding to a hearing thereon, *held* not an abuse of discretion, where prior continuances had been granted for hearing "on the merits," with leave to take evidence, which evidently related to the petition of intervention itself.

2. **Bankruptcy ⬦⟹43—Whether directors of corporation have authority to file petition is matter of state law.**

Whether the directors of a corporation, without authority from the stockholders, have power to file a petition in voluntary bankruptcy, must be determined by the law of the state in which the corporation is organized.

3. **Bankruptcy ⬦⟹43—In absence of statute on the subject, directors of corporation may file petition.**

Under the general law, in the absence of any provision on the subject in the statutes of the state, or in its articles of incorporation or by-laws, the directors of a corporation are authorized to execute a general assignment of its property for the benefit of creditors, and such power extends to the filing of a petition in voluntary bankruptcy.

4. **Bankruptcy ⬦⟹43—Corporations; filing of petition not an "incumbrance" of property.**

The filing of a petition in bankruptcy by a corporation *held* not an "incumbrance" of its property, within the meaning of Rev. St. Colo. 1908, § 865, as amended by Laws Colo. 1915, p. 175, providing that the directors of a mining corporation shall not have power to incumber its mines or plant without a vote of the stockholders authorizing it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Incumbrance.]

Elliott, District Judge, dissenting.

Petition to Revise Order of the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

In the matter of the Custer Slide Mining & Development Company, bankrupt. On petition of William· H. Fitts to revise order of District Court. Petition denied.

Daniel B. Ellis, of Denver, Colo. (Henry T. Rogers, Lewis B. Johnson, and Pierpont Fuller, all of Denver, Colo., on the brief), for petitioner.

William L.· Dayton, of Denver, Colo. (Wilbur F. Denious, of Denver, Colo., on the brief), for respondent.

Before CARLAND and STONE, Circuit Judges, and ELLIOTT, District Judge.

CARLAND, Circuit Judge. [1] The Custer Slide Mining & Development Company, a Colorado corporation, was adjudged a bankrupt by the United States District Court for the District of Colorado

on October 2, 1918, upon its voluntary petition, pursuant to a resolution of its board of directors, adopted September 30, 1918. On November 16, 1918, the petitioner filed his petition for leave to intervene in the bankruptcy proceeding, to which was attached a proposed petition in intervention. The hearing upon the application to intervene was fixed for November 22, at 10 o'clock a. m. At the time fixed for said hearing the bankrupt appeared and filed an answer to the petition for leave to intervene. On November 27 the petitioner filed a motion for leave to file an amendment to his petition of intervention, and on the same day filed a replication to the answer of the bankrupt.

The record further shows that on the morning of November 22, 1918, counsel for petitioner appeared and reported to the court that the petitioner was ill and could not appear in court, although he was then in Denver, Colo., where the hearing was to be had. About 10 days thereafter, the petitioner went to Colorado Springs, Colo., where he remained until about the middle of January following. On January 8, 1919, petitioner and the bankrupt appeared by counsel before the District Judge in chambers, and by agreement the matter was again set for hearing on the merits for January 30; the judge announcing at the time that the matter involved must be tried at that time, and that, if counsel for petitioner should ascertain that he could not then present his testimony, the same would have to be taken by deposition, and as a further accommodation, if petitioner's physical condition was such that he could come to Denver and testify before January 30, the matter would be taken up, tried, and determined on short notice. The court was unable to hold the hearing on January 30, and again continued the matter to February 4; counsel being notified of the postponement. On February 4, counsel appeared, but, the court being engaged, they were excused until the next morning at 10 o'clock, at which time the matter was called for hearing.

Thereupon counsel for petitioner announced that his client was then in California and a further continuance was asked for. The court asked counsel why the petitioner had not remained in Colorado and come to Denver for the hearing, if he was able to go to California, or why his deposition had not been taken, when petitioner found for any reason that he could not be present. Counsel for petitioner said to the court that petitioner had important business interests in Salt Lake that needed his immediate attention, and that he had gone to Salt Lake, and thence to San Francisco, where he expected to submit himself to a surgical operation. A telegram from petitioner, dated January 28, at San Francisco, and also what purported to be a letter from a surgeon at the same place, were read by counsel, to the effect that petitioner could not, on account of his physical condition at that time, come to Denver. The court thereupon announced that, in view of the prior setting and understanding in regard to the case, the same would not be further continued, whereupon counsel for petitioner read a written unverified statement as to what he proposed to prove. After argument, the court granted the prayer of petitioner for leave

to intervene, but at the same time made the order sought to be revised in this proceeding. It is as follows:

"And thereupon this matter comes on now to be heard upon the said petition of intervention, the answer thereto, and the replication to said answer, the answer of the bankrupt company to said petition for leave to intervene and the replication to said answer being considered and treated as answer and replication, respectively, to said petition of intervention, and is argued by counsel. And thereupon, on consideration thereof, it is ordered by the court that the said petition of intervention be and the same is hereby denied, and that the same be and it is hereby dismissed out of this court, at the cost of petitioner."

The record shows that the petition in intervention set forth the same facts as the petition for leave to intervene, and this accounts for the recital in the order complained of to the effect that the answer of the bankrupt to the petition for leave to intervene and the replication thereto of petitioner should be considered and tried as an answer and replication, respectively, to the petition of intervention. We are satisfied that considering the language used by the court at the times the hearing was continued, namely, that the hearing should be upon the merits, and also that the matter should be tried, that the court understood the hearing where testimony should be offered should be upon the petition in intervention itself, as the question as to whether the petitioner should be allowed to intervene was a matter determinable upon the face of the petition for leave to intervene, and was not the subject of trial upon the merits, and therefore the error, if any, committed by the court in denying a hearing on February 5, must be determined by considering whether or not the court abused its discretion in refusing a continuance.

Counsel for petitioner claims that this question is not only involved, but that the court by its action refused to give petitioner his day in court on his petition in intervention, because the court no sooner granted petitioner the right to file his petition in intervention than the court dismissed the same. It is our opinion that the hearing which the court spoke of during the continuance of the proceeding was a hearing on the petition of intervention, and that the mere fact that a formal order allowing petitioner to intervene, which was not made until February 5, 1919, cannot control the character of the proceeding, in view of the fact that the only petition in intervention that was ever filed in court was filed November 16, 1918. About six weeks elapsed after the adjudication in bankruptcy before the petitioner moved to intervene, and in our judgment he was given ample opportunity to sustain his petition in intervention prior to February 5, 1919, and there was no abuse of discretion in refusing to continue the case further for the taking of evidence.

[2] Counsel for petitioner next claims that, if there was no error in refusing a continuance, there was error in the action of the court in dismissing the petition in intervention, as the pleadings and record showed that the voluntary petition in bankruptcy was filed by the bankrupt in pursuance of authority granted by the directors of the corporation alone, without the consent or authorization of the stock-

holders. Whether the directors of a corporation, without the authority from the stockholders, have power to file a petition in voluntary bankruptcy, must be determined by the law of the state in which the corporation is organized. Home Powder Co. v. Geis, 204 Fed. 568, 570, 123 C. C. A. 94 (Eighth Circuit); Dodge v. Kenwood Ice Co., 204 Fed. 577, 123 C. C. A. 103.

[3] In Home Powder Co. v. Geis, supra, this court said:

"It is not to be presumed that there will be found in the general laws of the state, or in the articles of incorporation or by-laws, any express provision authorizing such admission; but under the general law the board of directors or trustees of a corporation have the power to authorize execution of an assignment of all property of the corporation for the benefit of its creditors, when such a step is advisable, unless such an assignment is prohibited by law, the articles, or by-laws."

This is, we understand, the general rule. See Dodge v. Kenwood Ice Co., supra; Rudebeck v. Sanderson, Trustee, 227 Fed. 575, 142 C. C. A. 207; In re Foster Paint Co. (D. C.) 210 Fed. 652; In re Russell Wheel Co. (D. C.) 222 Fed. 569.

[4] Counsel for petitioner claims that the laws of Colorado expressly provide that the directors of a corporation have no power without the consent of the stockholders to file a voluntary petition in bankruptcy. Section 865, Rev. Stat. of Colo., as amended by Session Laws of 1915, page 175, is cited in support of this contention. This statute reads as follows:

"The board of directors or trustees of a mining or manufacturing corporation shall not have power to incumber the mines or plant of such corporation, or the principal machinery incident to the production from such mine or plant until the question shall have been submitted at a proper and legal meeting of the stockholders and a majority of all the shares of stock shall have been voted in favor of such proposition; and any mortgaging or incumbering of such property, without such consent shall be absolutely void."

In order to make this statute applicable the filing of a voluntary petition in bankruptcy must be an "incumbering" of the property of the bankrupt. This court in Westerlund v. Black Bear Mining Co., 203 Fed. 599, 121 C. C. A. 627, construed this statute and expressly defined what the words "incumber" and "incumbering" used in the statute mean. In the case cited it was said:

"The words 'incumber' and 'incumbering,' when used in reference to property and its title, are words of this character, and the known legal meaning of these words in their popular sense, in the sense that would be attributed to them by conveyancers, lawyers, and judges, the persons most conversant with them, included when this statute was enacted, and still includes, not only mortgages, deeds of trust, and pledges for the payment of money, but every right or interest in the land which may subsist in third persons to the diminution of the value of the land or its title, but consistent with the passing of the fee by the conveyance of the owner."

And again on page 610 of 203 Fed. on page 638 of 121 C. C. A., in the same opinion, it is said:

"When this statute was enacted, the popular sense, the ordinary significance, and the known legal meaning of the words 'incumber' and 'incumbering,' when used with reference to property or its title, included every right or interest in land which may subsist in third persons to the diminution of the

value of the land, or its title, but consistent with the passing of the fee by the conveyance of the owner."

This language is fully supported by a number of cases cited in the opinion. The statute in question was passed in 1895, and the amendment of 1915 simply added the proviso that a lease for a period of not exceeding five years should not be deemed an incumbering of property. At the time the statute was passed there was no bankruptcy law, so that it cannot be claimed that the Legislature of Colorado had the provisions of that bankruptcy law in mind. We do not believe that the filing of a voluntary petition in bankruptcy can reasonably be held to be an incumbering of property. The voluntary petition of a person or corporation to be adjudged a bankrupt results, of course, in an adjudication in bankruptcy; but this adjudication in and of itself, without any assignment, transfer, or other act of the bankrupt, operates to divest him of all title and to vest it in the trustee of his creditors. Remington on Bankruptcy, § 1112; Robertson v. Howard, 229 U. S. 254, 33 Sup. Ct. 854, 57 L. Ed. 1174.

The words "incumber" and "incumbering" in the statute, as this court said, must be construed in accordance with their popular sense, a sense that would be attributed to them by conveyancers, lawyers, and judges, the persons most conversant with them. Given their popular meaning, these words do not apply to an instrument or proceeding which has the effect to convey the whole estate absolutely. Such a conveyance is not an incumbrance. This is a bankruptcy proceeding conducted on equitable principles, and this makes it proper to mention a proceeding in the case with which the petitioner was connected. The petitioner on May 16, 1919, applied to this court for an order staying the sale of the bankrupt property advertised for May 9, 1919. After the hearing on said application an order was entered by this court postponing the sale of the property until July 9, 1919. This order recited that the petitioner consented to the sale on said day, and on July 9, 1919, the property was sold, and the sale has been confirmed by the referee; the petitioner having filed his claim with said referee in the sum of $7,858.17.

This proceeding of the petitioner may not estop him from litigating the question which he has now before the court, but with the case in its present condition this court will not go out of its way to sustain objections that are more or less technical.

The petition to review is denied.

ELLIOTT, District Judge (dissenting). I concur in the foregoing if the case is to be considered upon the merits.

I am of the opinion, however, that the undisputed record discloses that petitioner never appeared in the bankruptcy proceedings for any purpose other than to present his petition for leave to intervene; that he never was treated as a party to such proceedings prior to the oral order of February 5th, at which time the petition for leave to intervene was pending, and as part of the order granting leave to file the petition in intervention the Court dismissed the same.

I am of the opinion that the preservation and enforcement of the rights of petitioner, brought into this proceeding by the order of February 5th, permitting him to file his petition in intervention, entitle him to a reasonable time after the granting of his petition to intervene within which to serve petition in intervention, have the issues made up thereon and prepare for trial, and therefore that the Court erred denying his application for a continuance for a reasonable time for such purpose.

The effect of the order was to permit petitioner to intervene and by the same order withhold from him the benefit thereof by denying his motion for continuance in order to produce his witnesses in support of the allegations of the petition, within a reasonable time to be fixed by the Court.

In my view the petition to revise should be granted and the cause remanded.