**LAWRENCE v. ATLANTIC PAPER & PULP CORPORATION** (two cases).

(Circuit Court of Appeals, Fifth Circuit. April 3, 1924.    Rehearing Denied
May 19, 1924.)

Nos. 4257, 4258.

**1. Bankruptcy ⬥16—Evidence held to warrant finding New York corporation's "principal place of business" was in Georgia.**

That New York corporation had offices in Southern district of Georgia only, where it kept all its books, records, and corporate seal, and from which it conducted all its business, and all its property was located in that district, warranted finding its "principal place of business" was in such district, within Bankruptcy Act, § 2 (Comp. St. § 9586), notwithstanding charter provision that its principal office was in New York City, and that its executive committee dealt with internal corporate affairs in New York City.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Principal Place of Business.]

**2. Bankruptcy ⬥43—Under by-laws, executive committee of board of directors held authorized to file voluntary bankruptcy petition.**

Where corporate by-laws authorized executive committee of board of directors to exercise powers of board, and board unanimously adopted resolution declaring corporation was unable to pay its obligations, and authorizing executive committee to determine what action should be taken to protect creditors, executive committee, in adopting resolution to file voluntary bankruptcy petition, bound corporation, and it was immaterial that resolution was passed before actual default in paying interest on corporation's outstanding bonds.

Petitions to Superintend and Revise from the District Court of the United States for the Southern District of Georgia; William H. Barrett, Judge.

Separate petitions by Mrs. Margaret G. Lawrence and by Samuel C. Lawrence against the Atlantic Paper & Pulp Corporation, bankrupt, to set aside and vacate an adjudication of voluntary bankruptcy, were denied. On petitions to superintend and revise. Petitions denied.

Wm. W. Gordon and Max Isaac, both of Savannah, Ga., for petitioners.

A. B. Lovett, Alvan B. Rowe, and A. R. Lawton, Jr., all of Savannah, Ga. (Alvan B. Rowe, Lawton & Cunningham, and Hitch, Denmark & Lovett, all of Savannah, Ga., on the brief), for respondent.

Before WALKER and BRYAN, Circuit Judges, and CALL, District Judge.

WALKER, Circuit Judge.    These are two petitions to revise in matters of law orders of the District Court for the Southern District of Georgia, dismissing petitions filed by the petitioners herein, praying that the adjudication of bankruptcy on a voluntary petition filed on November 1, 1923, in the name of Atlantic Paper & Pulp Corporation, a corporation organized under the laws of New York (herein called the corporation), be set aside and vacated, that a receiver of the property of the corporation be appointed, and for other relief. One of the petitions was filed by Samuel C. Lawrence, a preferred stockholder and

an alleged creditor of the corporation. The other petition was filed by Margaret G. Lawrence, the wife of Samuel C. Lawrence, and a common stockholder of the corporation.

Each of the dismissed petitions attacked the bankruptcy adjudication on the following grounds: (1) That the bankruptcy proceeding was not maintainable in the Southern district of Georgia, because, for the greater portion of six months immediately preceding the filing of the bankruptcy petition, the principal place of business of the corporation was in the Southern district of New York, and not, as alleged in the bankruptcy petition filed, in the Southern district of Georgia. (2) That the bankruptcy proceeding was instituted without being authorized by valid corporate action of the corporation, and not in pursuance of a resolution of the directors which was relied on in the institution of the proceeding.

[1] On the hearing in the court below evidence to the following effect was adduced: The charter of the corporation showed that the purposes for which it was formed included the following:

"To manufacture, produce, prepare, purchase, import, export, sell and generally to deal in any and all kinds of paper and in all ingredients, products, and compounds thereof, and in any materials that now are or may hereafter be used in connection with such manufacture. To manufacture, purchase, or otherwise acquire, deal in, hold, own, manage, sell, pledge, transfer, or otherwise dispose of goods, wares, merchandise, and property of any and every class and description."

The charter contained the following provisions:

"The principal business office of the corporation is to be located in the borough of Manhattan, city of New York. * * * The board of directors may appoint and from time to time reappoint an executive committee from among their number, which committee, to the extent provided in the by-laws of the corporation, shall have and may exercise all the powers of the board of directors in the management of the business and affairs of the corporation during the intervals between the meetings of the board of directors, so far as may be permitted by law."

After the corporation was organized it undertook to build a pulp mill at Port Wentworth, near Savannah, in the Southern district of Georgia. It established offices in Savannah, and nowhere else. It has not at any time since it was incorporated had an active office, for the transaction of business, an office for which it paid rent, anywhere, except in Chatham county, Ga. The pulp mill has been shut down since September, 1921. The records, books, and accounts of the corporation have always been kept in Savannah. The minute book and corporate seal have been kept there. During 1923 the corporation, jointly with other corporations, occupied certain offices in an office building in Savannah, contributing $250 per month towards the rent and general office expenses. During the six months between May and November, 1923, it maintained and kept up an office force at Savannah, there took in and paid out money, employed laborers and watchmen to look after its property, and sold certain of its pulpwood on hand. The corporation had no property anywhere outside of the Southern district of Georgia.

Between May and November, 1923, the corporation made contracts in Savannah in buying necessary supplies to keep up the general physi-

cal condition of the mill property and in selling most of its pulpwood on hand, looked after its insurance and everything that was necessary to maintain its property, took in small amounts of money from sources other than the sale of pulpwood, collected something in excess of $10,-000 in settlement of an old pulpwood contract, that matter being handled through New York attorneys, but under the direction of the corporation's officers, who resided in Savannah, and were paid salaries there. During the period mentioned the corporation employed and paid several men, watchmen and caretakers, and a man to keep the machinery of the mill in condition. The corporation registered for doing business in Georgia within that period, as required by the laws of that state. The corporation's receipts during that period were $20,371.08, and its disbursements were $22,082, exclusive of salaries paid to its officers. The meetings of the corporation's directors and of its executive committee, which will be referred to below, were held in New York in the offices of a firm of which one of its directors is a member. The corporation did not rent any office in New York, and its name was not listed in the telephone directory of that city.

The action of the court which is presented for revision in matters of law is not subject to be set aside on the first above mentioned ground of attack, if evidence adduced warranted, a finding that, within the meaning of section 2 of the Bankruptcy Act (Comp. St. § 9586), the corporation, during the greater portion of the six months preceding the filing of the bankruptcy petition, had its principal place of business in the district in which that petition was filed. We are of opinion that it cannot properly be said that there was an absence of evidence warranting such a finding. Though the main purpose for which the corporation was formed was the carrying on of a manufacturing business, which was not carried on at all during the six months preceding the filing of the bankruptcy petition, the corporation continuously during that period did transact in the Southern district of Georgia business which under its charter was within the purposes for which it was formed. Included in the purposes for which the corporation was formed were the selling and general dealing in any materials that might be used in connection with the manufacture of paper, the purchasing, holding, and managing of property of any kind, and the dealing in and selling of such property. In selling wood on hand, in managing and caring for its idle pulp mill, in engaging and paying employees assigned to services in that connection, in buying supplies required to keep up the physical condition of its property, and in directing proceedings for the collection of debts owing to it, the corporation was transacting business within the purposes for which it was formed.

The above-mentioned phase of the evidence adduced warranted a finding that, while the corporation's manufacturing plant was not in operation, the enumerated activities constituted the principal business of the corporation. During the six months immediately preceding the filing of the bankruptcy petition the scene of substantially all of those activities, of the greater part of the corporation's dealings with the public, was in the Southern district of Georgia. This being so, the facts that the corporation's charter contains the above set out provision as to

the location of its "principal business office," and that during the period mentioned the corporation's directors and its executive committee dealt with its intracorporate affairs at meetings held in New York, does not prevent a proper finding that during that period the corporation's principal place of business was in the Southern district of Georgia, where all its property was, and where most of such business as it had occasion to do was done. Dryden v. Ranger Refining & Pipe Line Co. (C. C. A.) 280 Fed. 257.

[2] The by-laws of the corporation contained the following provisions:

"The board of directors may from time to time appoint, and remove at pleasure, an executive committee, consisting of as many of such members of the board as shall, in the resolution of their appointment, be designated, and shall from time to time appoint one of such committee to act as chairman thereof during the pleasure of the board. The executive committee shall have and may exercise all the powers of the board of directors in the management of the business and affairs of the corporation during the intervals between meetings of the board, except the power to fill vacancies in the board and the power to amend the by-laws."

At a meeting of the corporation's board of directors held in New York on October 26, 1923, the following resolution was unanimously adopted:

"Voted that, whereas, the corporation is unable to obtain funds to make payment of principal and interest of its outstanding mortgage bonds due November 1, 1923, and is unable to pay other debts now due and owing by it: Now, therefore, the executive committee of this board be and hereby is authorized and empowered to determine what action the corporation should take to protect the interest of all its creditors and other persons interested in its affairs whether by general assignment for the benefit of creditors, by applying for the appointment of a receiver of the property of the corporation, by filing a voluntary petition in bankruptcy or otherwise, and to carry such determination into effect."

The minutes of that meeting contained the following:

"Mr. Fetty presented a statement of the financial condition of the corporation as of September 30, 1923, and stated that there were no funds available for payment of principal and interest due November 1, 1923, on account of the outstanding first mortgage bonds of the corporation. * * * It was agreed that there was no prospect of the corporation being able to obtain funds to make the bond payments due on November 1, 1923, and it was felt that some action on the part of the corporation might be desirable, in order to protect the interests of all concerned and to prevent any particular creditor securing any advantage over the other creditors."

At a meeting of the corporation's executive committee, held in New York on October 30, 1923, at which a quorum was present, the following resolution was unanimously adopted:

"Voted, that, pursuant to the authority delegated to this committee by the board of directors of Atlantic Paper & Pulp Corporation by vote adopted at its meeting held on October 26, 1923, and by virtue of all other power and authority thereto enabling this committee, counsel for the corporation be and hereby is authorized and directed to cause to be filed on behalf of the corporation a voluntary petition in bankruptcy, and the officers of the corporation be and hereby are authorized and directed to execute such instruments and do such other acts as in the opinion of counsel may be necessary or desirable for such purpose."

The voluntary bankruptcy petition, signed in the corporation's name by its president, was filed on November 1, 1923. It is contended that

the above set out resolution of the board of directors was not effective to authorize the filing of the bankruptcy petition, because that resolution undertook to delegate to the corporation's executive committee the determination of the action to be taken in behalf of the corporation to protect the interests of all the creditors and other persons interested in its affairs. The resolution adopted by the directors evidenced their determination that action be taken to protect the interests of the corporation's creditors and other persons interested in its affairs, and their consent that such action be taken by filing a voluntary petition in bankruptcy. It seems that, even in the absence of the circumstance mentioned below, it was competent for the directors to authorize the adoption of any one of several designated methods of accomplishing their expressed purpose, and that it was not necessary for them to select the filing of a voluntary petition in bankruptcy as the method to be adopted. Chappell v. United States, 160 U. S. 499, 510, 16 Sup. Ct. 397, 40 L. Ed. 510.

But the resolution of the directors was not the sole source of the power and authority of the executive committee to take the action evidenced by the adoption of its resolution in pursuance of which the bankruptcy proceeding was instituted. As above disclosed, the executive committee, under by-laws adopted in pursuance of power conferred by a provision of the corporation's charter, possessed "all the powers of the board of directors in the management of the business and affairs of the corporation during the intervals between meetings of the board, except the power to fill vacancies in the board and the power to amend the by-laws." By the quoted provision of the corporation's charter its stockholders authorized their agents, the directors, to delegate to the executive committee the authoriy which was exercised by the latter's resolution. It follows that the delegation of authority was valid, and the executive committee, in adopting its resolution, represented and bound the corporation and its stockholders as if directly appointed by them. Union Pacific Ry. Co. v. Chicago, etc., Ry. Co., 163 U. S. 564, 597, 16 Sup. Ct. 1173, 41 L. Ed. 265; Kinkead v. Hartley, 161 Iowa, 613, 143 N. W. 591, Ann. Cas. 1915D, notes, 1, 11. The board of directors and its authorized substitute, the executive committee, had the power to authorize the filing of the voluntary bankruptcy petition, and exercised that power. In re Jefferson Casket Co. (D. C.) 182 Fed. 689; 1 Collier on Bankruptcy (13th Ed.) 198.

The contention that the bankruptcy proceeding was instituted without being duly authorized was sought to be sustained on the additional ground that under the terms of the resolution of the board of directors the authority it conferred on the executive committee was not exercisable prior to the corporation's default, by failing to pay when due principal and interest, payable November 1, 1923, on the corporation's outstanding bonds. The resolution of the directors contains no provision or condition to that effect. The minutes of their proceedings at the meeting on October 26, including the preamble of the resolution adopted, show that a recognition of the corporation's inability to obtain funds to make the bond payments falling due on November 1, 1923, had effect in influencing the directors to authorize the taking of action

to protect the corporation's creditors and others concerned in its affairs. But it is not disclosed that it was contemplated that the taking of such action should be postponed until after the occurrence of the expected default by failing to make payments due on November 1, 1923. Under the resolution of the directors, the filing on or prior to that date of a voluntary bankruptcy petition in behalf of the corporation was authorized, assuming that the validity of the action taken by the executive committee was dependent upon its being in conformity with the resolution of the directors.

We conclude that the action of the court in refusing to vacate the bankruptcy adjudication was not erroneous on any ground urged. So far as the dismissed petitions sought relief not dependent upon an impeachment of the bankruptcy adjudication, the petitioners were not prejudiced by the orders which are complained of, as each of those orders was expressly made without prejudice to any rights of the petitioner which were assertable before the referee in bankruptcy or elsewhere.

Each of the petitions to superintend and revise is denied.