## In re LONE STAR SHIPBUILDING CO.

(Circuit Court of Appeals, Second Circuit. February 9, 1925.)

No. 169.

1. Bankruptcy ⬅440—Petition to revise held proper method to review order refusing to vacate adjudication.

Order of District Court, denying application to vacate order of adjudication in bankruptcy and to dismiss petition, is reviewable by petition to revise, and not by appeal.

2. Bankruptcy ⬅43 — Notice of directors' meeting held sufficiently to specify purposes thereof to authorize resolution for filing of voluntary bankruptcy petition.

Notice of directors' meeting sent out by directors, who were members of firm which was creditor and stockholder in corporation, referring to attachment and seizure of corporation's property by such firm, held sufficiently to specify purposes of meeting to authorize resolution authorizing filing of voluntary bankruptcy petition.

3. Corporations ⬅298(3)—No special notice of purpose of calling directors' meeting necessary.

No special notice of purpose of calling directors' meeting is necessary, particularly to di-

rectors having interests adverse to corporation, and who have absented themselves voluntarily.

**4. Corporations ⊜⇒297—Powers of board of directors are original and undelegated.**

Powers of board of directors are, in a very important sense, original and undelegated, and stockholders do not confer, and cannot revoke, such powers.

**5. Bankruptcy ⊜⇒43—Board of directors may authorize filing of voluntary petition.**

Board of directors of corporation may authorize filing of voluntary bankruptcy petition.

**6. Bankruptcy ⊜⇒43—Resolution of board of directors, authorizing filing of voluntary petition, delegated merely ministerial acts, and was valid.**

Resolution of board of directors, authorizing director and officer to file voluntary bankruptcy petition, retain counsel in connection therewith, make necessary arrangements for counsel fees and expenses, and execute all other instruments, documents, and papers necessary and proper in connection therewith, delegated merely ministerial acts, and was valid.

**7. Corporations ⊜⇒52—Maryland corporation's principal place of business held to be in New York.**

Where all executive and official business of bankrupt was from beginning transacted in New York, and its bank account and books of account were kept and litigation and settlement of claims was conducted in New York, and it had no property or place of business elsewhere, except statutory office in Maryland, its principal place of business was in New York.

**8. Bankruptcy ⊜⇒51 — Formal statement by board of directors as to principal place of business creates prima facie case; burden of proving contrary on creditor seeking to vacate adjudication.**

Formal statement of board of directors as to corporation's principal place of business, resulting in adjudication, creates prima facie case, which leaves burden of proving contrary on creditor seeking to vacate adjudication on ground of court's lack of jurisdiction.

**9. Bankruptcy ⊜⇒44—Voluntary petition held sufficiently to allege bankrupt's "principal place of business;" "principal office."**

Maryland corporation's voluntary petition in bankruptcy, stating that its "principal office" was in Southern District of New York, sufficiently alleged its "principal place of business"; "principal," as applied to such office, having no relation to statutory office, but to office where major portion of bankrupt's business is actually conducted.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Principal Office; Principal Place of Business.]

**10. Bankruptcy ⊜⇒44—Amendment of voluntary petition allowable nunc pro tunc to show greater precision.**

Court had power to allow amendment to voluntary bankruptcy petition, which amplified and gave greater precision to allegations thereof relating back to filing of original petition, but such amendment should be written to comply with General Order No. XI.

Petition to Revise and Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the Lone Star Shipbuilding Company, bankrupt. Duncan, Young & Co., a corporation creditor and stockholder, petitions to revise an order of the District Court, denying application to vacate an order of adjudication in bankruptcy and to dismiss petition, and also appeals from such order. Appeal dismissed, and order affirmed.

Petition to revise an order of the District Court denying an application to vacate an order of adjudication in bankruptcy and to dismiss the petition; also an appeal from the same order seeking the same relief. From the order denying the application, Duncan, Young & Co., a creditor and stockholder, petition and appeal. Affirmed.

Davies, Auerbach & Cornell, of New York City (Charles H. Tuttle and Murray C. Bernays, both of New York City, of counsel), for appellant.

Harry G. Liese, of Brooklyn, N. Y. (Elkin Turk, of New York City, of counsel), for bankrupt.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. [1] The appellant has taken an appeal, and also petitions to revise the order here sought to be reviewed. We regard the proper remedy to present the case to this court to be a petition to revise, and therefore the appeal is dismissed.

The application below was to set aside an adjudication in involuntary bankruptcy and to dismiss the petition therefor. The application is based upon the argument (a) that the corporate action authorizing the petition was insufficient; (b) that the District Court had no jurisdiction over the subject-matter of the petition; and (c) that the subject-matter was not sufficiently alleged. The appellant is a creditor and holder of the common and preferred stock of the bankrupt. The latter was organized under the laws of Maryland in 1917 for the purpose of shipbuilding. Duncan, Young & Co. is a New York corporation, and two active members of that company were the prime movers, officers, and directors of the bankrupt. The bankrupt leased land at Beaumont, Tex., where it built ships for the government under contracts with the Shipping Board. By the terms of a contract with the appellant, it

maintained its offices with the appellant in New York City, and carried on practically all of its business of administration of the affairs of the company from that office. Indeed, the claim of the appellant sets forth furnishing office accommodations, stenographers, telephone, administrative, and engineering services in New York City. With the termination of the war, the work at Beaumont ceased and shut down completely in 1920. All the business was carried on in New York. The bank account was kept there. An office to comply with the statute was maintained in Maryland. Its chief business, after 1920, was pressing claims against the government for breaches of contracts. All its assets were in the Southern district of New York.

On February 9, 1924, the appellant instituted an action against the bankrupt in the New York Supreme Court and an attachment was issued against its bank account. The claims in this state court action arose principally out of services rendered in New York, together with the expenses incurred, rent, telephone, and stenographic services. On February 18, 1924, the board of directors met pursuant to the request of two directors. After the notice of such meeting was drawn by an officer of the appellant, the following notice was given:

"Messrs. McKee Duncan and S. Marsh Young, directors of the company, have requested in this notice your attention should be called to the fact that they, as directors of the company, and at the same time interested adversely to the company in the above-mentioned actions, will be unwilling to attend and vote at such meeting upon the matter under consideration, and that the attendance of each of the other directors is therefore urged, in order that consideration may be given to the matters by all directors not interested."

The remaining directors met, and to avoid an illegal preference, that might be obtained by the appellant, authorized their officers to defend this suit, and also, within four months after the attachment, to file a voluntary petition in bankruptcy. The resolution recited that a discussion ensued before the board, and there was the unanimous view, as expressed by the directors, that in the vicissitudes of litigation there was a chance that the appellant might be entirely unsuccessful in its litigation in the state court, and that such recovery and expenses attached thereto would in all likelihood consume the entire amount remaining in the treasury of the company, and that measures should be taken to protect the interest of all other creditors, as well as the stockholders, against the fixing of the lien of these attachments and the possibility of a resulting preference to the appellant. It was recited, on the advice of counsel, that, unless the attachment was previously vacated, the attachment would be good as against other creditors unless, within four months after the levy of said attachment, a petition in bankruptcy were filed either by or against the company. It is recited that a discussion then ensued as to the proper course to be followed, and the full protection of the rights of the company, its creditors, and stockholders, and then, on motion duly made, and seconded, it was—

"Resolved, that Frederick E. Hazler, as treasurer of the company, and Edward J. Barber, as a director of the company, or either of them, be and they hereby are authorized to make, execute, acknowledge, verify, seal, and file a petition at any time prior to June 9, 1924, praying that this company be adjudicated a voluntary bankrupt, and that necessary schedules and other documents and schedules accompany the same, and to retain counsel in connection with the foregoing, and to make such necessary arrangements for the payment of counsel fees, expenses, and costs as the situation requires, and to do any and all other acts and things to make, execute, acknowledge, verify, seal, deliver, and file any and all other instruments, documents, and papers as may be necessary, proper, or advisable in connection with the foregoing."

[2] It is argued that the determination to file a petition in bankruptcy was not reached by the directors, but the determination was delegated by the foregoing resolution to two of the members. The theory of this claim is that the notice of the meeting of directors did not adequately specify the purpose of that meeting, and that the resolution relied on by the officer filing the petition does not confer authority in proper form. The notice of meeting was sent out by members of the appellant's firm. All the directors were present, except the two who excused themselves for reasons stated in the notice. The notice adequately told the purpose of the meeting. There is no protest that the resolution was not entirely responsive to the notice of the meeting. The notice referred to the attachment of the appellant and the seizure of the corporation's property and a desire to discuss the course which the corporation should pursue in regard to such attachment. If the notice had merely apprised the directors that the meeting was to be called, without more than in any wise inti-

mating the business that was to be conducted, no objection could now be taken.

[3] No specific notice of the purpose was necessary, and this is particularly true where the objecting creditors have an adverse interest and have absented themselves voluntarily. Dodge v. Kenwood Ice Co., 204 F. 577, 123 C. C. A. 103. This court has held that a director who has an adverse interest loses pro hac vice his character as a director, and thus he is not qualified to even constitute a member of a quorum. Enright v. Heckscher, 240 F. 863, 153 C. C. A. 549; In re Webster Loose Leaf Filing Co. (D. C.) 240 F. 779. The reason for this rule is that the director, in acting for the corporation, must do so in the best interests of the corporation. His duty is first to the corporation.

[4-6] The resolution above quoted granted a delegation of power to act, but the discretion was in the board of directors. It limited the time when the action was to be taken. The directors are the primary source of authority, and the law which ordinarily prohibits an agent from redelegating the authority conferred upon him has no application. The extent to which this authority can be delegated is illustrated in the authority conferred upon executive committees of large banks. The powers of the board of directors are, in a very important sense, original and undelegated. The stockholders do not confer, nor can they revoke, these powers. They are like private principals. So long as power to file the petition has been conferred, the requirements of the law are satisfied. De Camp Glass Casket Co. (C. C. A.) 272 F. 558; Rudebeck v. Sanderson, 227 F. 575, 142 C. C. A. 207. A board of directors may authorize the filing of a petition in voluntary bankruptcy. In re United Grocery Co. (D. C.) 239 F. 1016; In re E. T. Russell Co. (D. C.) 291 F. 809.

We think the language of the resolution delegated to Hasler and Barber ministerial acts. They were authorized "to make, execute, and acknowledge, verify, seal, and file a petition, to retain counsel in connection with the foregoing, and to make necessary arrangements for the payment of counsel fees and expenses, and to execute all other instruments, documents and papers that may be necessary, proper, and advisable in connection with the foregoing." Indeed, the board of directors might have issued broader powers and might have vested some degree of discretion, as in the cases of the Guanacevi Tunnel Co., 201 F. 316, 119 C. C. A.

554, and Lawrence v. Atlantic Paper & Pulp Co. (C. C. A.) 298 F. 246.

[7] The principal place of business of the bankrupt was in New York. All the executive and official business of the bankrupt from its beginning was transacted in New York. Its only asset, a bank account of $95,000, was deposited in a bank in the Southern district of New York. The books of account were constantly kept there, at least during the entire six months preceding the filing of the petition. The litigation and settlement of claims was conducted from New York, and the appellant's claim seems to have arisen from services performed in New York. Checks and vouchers in payment of moneys were drawn on the bank in New York, and signed and countersigned there. It had no property or place of business elsewhere, except to maintain the statutory office in the state of Maryland. The state of incorporation was nominally selected, because of some particular adaptability in the laws of the state for the purpose of the incorporators. This court has held that the statement in the charter as to the principal office is not conclusive, the question being where in point of fact was the company's principal place of business during the period fixed by the act.

[8] The formal statement of the board of directors, resulting in adjudication, creates a prima facie case, which leaves the burden of evidence to meet it upon the creditor who seeks to vacate the adjudication. Guanacevi Tunnel Co., 201 F. 316, 119 C. C. A. 554; Lawrence v. Atlantic Co. (C. C. A.) 298 F. 246; In re Pusey & Jones Co. (C. C. A.) 286 F. 88.

In Lawrence v. Atlantic Paper & Pulp Co., supra, a New York corporation having offices in Savannah, Ga., was actually engaged in winding up its affairs. It had a pulpmill, which it was trying to dispose of in Georgia, and making payment of its debts. The meetings of the corporation directors and executive committee were held in New York. Under the provision of its character, although the corporation was not carrying on the business for which it was organized, it was actually winding up its affairs. The court held that the district of Georgia had jurisdiction for the purpose of bankruptcy over the corporation.

In the Guanacevi Tunnel Co. Case, supra, the actual business was conducted in the city of New York. It was an Arizona corporation. The contention of a creditor on the petition to vacate the adjudication was that, the principal place of business having been

designated in its certificate of incorporation as in Arizona, the District Court in New York had no jurisdiction to entertain the bankruptcy proceedings. The court held otherwise, pointing out that the company never did any mining, that its activities were principally connected with the sale of stock and payment of its running expenses in New York, and that the only place in which business had been conducted during the statutory period of six months was in New York. See, also, Dryden v. Ranger Refining & Pipe Line Co. (C. C. A.) 280 F. 257; Marine Machine & Conveyor Co. (D. C.) 91 F. 630.

We think it amply established that, within the principle of these causes, the principal place of business of the bankrupt was in the Southern district of New York.

[9] It is argued that the petition does not sufficiently allege the bankrupt's place of business. The petition states:

"The petition of Lone Star Shipbuilding Company, having its principal office at 17 Battery Place, in the county of New York and state of New York, in the Southern district of New York, respectfully represents: That this corporation was organized under the laws of the state of Maryland and is engaged in the business of shipbuilding. That it has had its principal office for the greater portion of six months next immediately preceding the filing of this petition at 17 Battery Place, New York City, within said judicial district."

It is argued that the statement, "principal office," is not the equivalent of the "principal place of business." The word "principal," as applied to that office, has no relation to statutory or charter provision, but has relation to the actuality; that is, the office where the major portion of the bankrupt's business was actually conducted. Dryden v. Ranger (C. C. A.) 280 F. 257; Burdick v. Dillon, 144 F. 737, 75 C. C. A. 603; In re First Nat. Bank, 152 F. 64, 81 C. C. A. 260, 11 Ann. Cas. 355. "Principal office," as used in connection with the Southern district of New York in the foregoing quotation, could not possibly mean a statutory office, but must necessarily mean a business office, and in this sense the corporation had its existence under the laws of Maryland.

[10] But, however, the court granted leave to the bankrupt to amend its petition nunc pro tunc. The court had power to grant such an amendment. First State Bank v. Haswell, 174 F. 209, 98 C. C. A. 217; Millan v. Exchange Bank of Mannington et al., 183 F. 753, 106 C. C. A. 327; International Silver Co. v. N. Y. Jewelry Co., 233 F. 945, 147 C.

C. A. 619. An amendment amplifies. In a petition which sets up no new cause of action, but merely amplifies and gives greater precision to the allegations in support of the cause of action originally presented, it relates back to the commencement of the action. Crotty v. Chicago Great Western Ry. Co., 169 F. 593, 95 C. C. A. 91; First State Bank v. Haswell, supra. It is urged that such an amendment must be written or printed in accordance with General Order No. XI. Millan v. Exchange Bank, 183 F. 753, 106 C. C. A. 327. The amendment may be granted nunc pro tunc. In re Louisell Lumber Co., 209 F. 784, 126 C. C. A. 508; In re Bieler (C. C. A.) 295 F. 78. When properly allowed, the amendment is the same cause of action asserted in the original petition, except that it grants greater precision to the charges therein. Canute S. S. Co. v. Pitts. Coal Co., 263 U. S. 244, 44 S. Ct. 67, 68 L. Ed. 287. To comply with order No. XI, however, when the cause is remanded to the District Court, the petitioner may file and verify a proper written amendment, so as to conform with General Order No. XI.

Order affirmed.