## Petition of HOOD FEED CO.

### In re KNOX.

(Circuit Court of Appeals, Sixth Circuit.
March 9, 1926.)

#### No. 4467.

Bankruptcy ⬅14—Bankrupt engaged in dairying in Georgia, having desk space in Chattanooga, Tenn., and from there managing distribution of milk and other personal business, held to have principal place of business in Chattanooga (Bankruptcy Act, § 2 [Comp. St. § 9586]).

Bankrupt, domiciled in Georgia and there engaged in dairying in partnership, but who rented desk space in Chattanooga, Tenn., and from there managed distribution of milk produced by partnership, and from there conducted his personal business, which was not negligible, *held* to have his principal place of business in Chattanooga, as affects court's jurisdiction under Bankruptcy Act, § 2 (Comp. St. § 9586), nor did any estoppel arise from fact that in his petition he described his occupation as "dairy products."

Petition for Revision of an Order of the District Court of the United States for the Southern Division of the Eastern District of Tennessee; Xenophon Hicks, Judge.

In the matter of the bankruptcy of Walter S. Knox. Petition by the Hood Feed Company, creditor, to revise an order of the District Court denying its motion to set aside an adjudication in bankruptcy. Order affirmed.

James H. Anderson, of Chattanooga, Tenn., for petitioner.

Charles A. Noone and Thomas, Thomas & Darwin, all of Chattanooga, Tenn., for respondent.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This proceeding is brought to review in matter of law, under section 24b of the Bankruptcy Act (Comp. St. § 9608), an order denying a motion of a creditor of the bankrupt to set aside an adjudication of bankruptcy made upon the debtor's petition therefor. The sole ground of the motion to set aside is lack of jurisdiction to make the adjudication, for the assigned reason that the bankrupt had not had his principal place of business, resided, nor had his domicile, within the Eastern district of Tennessee, for the whole or the greater part of the six months immediately preceding the filing of bankruptcy petition. Bankruptcy Act 1898, § 2 (Comp. St. § 9586).

The bankrupt was not domiciled, nor did he reside, in the Eastern district of Tennessee during any part of this six-months period. The crucial question is whether his principal place of business was in that district. For about two years before the filing of the petition, bankrupt and his wife owned jointly a farm in Walker county, Ga., a few miles from Chattanooga, consisting of about 90 acres, upon which they as a partnership, under the style of Knox Dairy Farm (each owning a one-half interest), operated a dairy, the milk being produced mainly from the Dairy Farm's cows and sold in Chattanooga, to the extent of about 100 gallons per day. The Farm bought no milk in Tennessee, but did buy small quantities thereof from neighbors in Georgia, the actual work of milk production being carried on by hired men under the management of the bankrupt and of his wife, when she was physically able.

The bankrupt had no *personal* business in Georgia, except to live there. The only business he transacted in that state was incidental to the partnership referred to. For several years before moving to Georgia, bankrupt and his wife had lived either in North Chattanooga or in St. Elmo, both places being in the Eastern district of Tennessee. During this Tennessee residence bankrupt had participated as a stockholder or partner successively in each of three business ventures, none of which seems to have proved successful. During the latter part of this Tennessee residence bankrupt's wife operated a dairy in North Chattanooga, where the principal office of the dairy seems to have been. Some time after the commencement of the Georgia dairy operation bankrupt thought it necessary to have an office in Chattanooga in connection with the partnership dairy business, and accordingly rented a desk from a tenant of an office in the Times Building, paying therefor $5 a month, as well as paying the tenant's stenographer for answering the telephone, also paying one-third of the rental for the telephone, which was in that tenant's name, although listed in the local telephone directory for the issue current at the time of the filing of the bankruptcy petition as "Knox Dairy Farm, Times Building," etc.

The principal use made by bankrupt of this telephone was for receiving orders for milk, answering complaints, and looking after collections for milk sold. It had the advantage of enabling the dairy customers to reach bankrupt directly on the local exchange, as against long distance use to the Georgia farm. At this office Knox spent each week two or three days or portions of days, bringing his dairy accounts back and

forth between home and the office, sending out from the latter bills to customers, there receiving payment by mail, taking orders for milk, and checking out milk deliveries. The Knox Dairy Farm had a bank account in one of the Chattanooga banks, bankrupt borrowed some money therefrom in connection with the Dairy Farm, and incurred therefor many items of indebtedness in Chattanooga, apparently including the debt of the petitioner herein against the firm. During the time this office was maintained in the Times Building bankrupt had a one-fourth interest in a mercantile business at Charleston, also in the Eastern district of Tennessee. Bankrupt occasionally visited the store, looked over the books, and noted the business to some extent. It was being wound up at about the time this bankruptcy proceeding was begun.

While the Times Building office was used principally for the partnership business, it was used to some extent as a place from and at which the bankrupt transacted some personal business, including working at insurance as a sort of side line, not as an agent of the insurance company, but working for an agent in soliciting life insurance, the two for a time renting space in the office of the Times Building tenant before referred to until the insurance agent moved out of that office, bankrupt continuing to work under him and helping sell insurance. For this work the bankrupt was paid by the insurance agent a part of the latter's commission on policies which they wrote. The two "traveled together." Bankrupt also had a personal bank account in Chattanooga, owed a personal note at each of two Chattanooga banks, as well as other personal and individual debts to creditors in Chattanooga. Practically all of his personal indebtedness was contracted to creditors in the Southern division of the Eastern district of Tennessee. The renewal of bankrupt's notes, the winding up of the Knox Furniture Company's affairs, and the mercantile business at Charleston, were also attended to from this office, at which he also received notice of the maturity of his bank paper.

During this two-year period the bankrupt also owned some real estate in East Chattanooga and a one-half interest in a store building at Charleston, Tenn., as well as an interest of some kind in ten acres in Bradley county, which was also in the Eastern district of Tennessee. The District Judge found as a fact that the office in the Times Building was used principally for the partnership business, and, further, that while bankrupt's personal affairs were "not of any great magnitude, and cannot be designated by any one particular appellation," yet that "he did have some personal business affairs, and that all such were transacted in the Southern division of the Eastern district of Tennessee, with this room in the Times Building as headquarters, and that for the greater portion of the six months preceding bankruptcy." This seems but another way of saying that he had a place of business in Eastern Tennessee, and no other place for doing his individual business. The judge concluded that the business of the Knox Dairy Farm was not bankrupt's business (probably meaning his individual business), which it was conceded was also true of the various business connections which bankrupt had in the Eastern district of Tennessee in which his interest was only that of a partner or stockholder.

The judge's action in denying the motion to dismiss seems, by necessary inference, to be based upon the conclusion that, even though the partnership business was perhaps more important than the bankrupt's personal business, yet that the statute did not require that the business transacted at the bankrupt's principal place of business represent in fact his principal income. It is not the principal business, but the principal place of business of the bankrupt that controls. The test of volume of business in terms either of output or of dollars and cents is not particularly pertinent to the situation before us. Continental Coal Corp'n v. Roszelle, C. C. A. 6, 242 F. 243, 246, 155 C. C. A. 83. The instant case is distinctly sui generis, and the authorities give little or no help as precedents.

Assuming, for the purposes of this opinion, that the principal place of business of the firm was in Georgia, where the milk was produced, rather than in Chattanooga, where it was distributed, yet production and distribution do not necessarily go together. Not all producers are distributors, nor do all distributors produce. At the very least, an important and potentially distinct part of the firm's business was transacted by the bankrupt at the Chattanooga office, at that office all of bankrupt's personal business also was done, and that personal business was not negligible. The success or lack of success of bankrupt's personal business ventures cannot be controlling. Had they all been successful, presumably his bankruptcy would not have occurred. The bankruptcy adjudication related only to the bankrupt's status. The firm was not a party.

We find in the debtor's statement (in his bankruptcy petition) of his "occupation" as "dairy products" nothing necessarily oppos-

ed to his present contention. We think the fact that he transacted at the Chattanooga office firm business to the extent stated, and in connection with his personal business, does not appreciably weaken the claim that this office was his principal place of business. Nor do we see in this statement of occupation any element of estoppel. Jurisdiction was claimed in the alleged fact of principal place of business in Chattanooga during the statutory period.

There was no inconsistency between residence in Georgia and principal place of business in Tennessee. That principal place of business was in one or the other of those two places. While it may be difficult to work out a conclusively patent demonstration, we are better content to adopt the conclusion of the district judge than to accept petitioner's contention that bankrupt's principal place of business was in Georgia, and under these peculiar circumstances the bankrupt's selection and designation of his principal place of business is not without importance.

The order of the District Court, denying the motion to set aside the adjudication of bankruptcy, is affirmed.