**In re EVANS.**

No. 21627.

District Court, W. D. New York.

Nov. 27, 1935.

Franchot & Warren, of Buffalo, N. Y., for bankrupt.

Donovan & Raichle, of Buffalo, N. Y., for creditors.

Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y., for creditors.

KNIGHT, District Judge.

Adjudication in bankruptcy herein was made on April 20, 1934. Certain judgment-creditors moved to set aside the adjudication for want of jurisdiction. The petition in bankruptcy recited that the petitioner had "his principal place of business" in this district for the greater portion of the six months preceding such filing. No period of residence or domicile is asserted. The aforementioned creditors contend that the allegation in the petition with respect to the place of business is untrue. The issue raised was referred to a special master to hear, try, and determine. Thereafter the special master made his report and sustained the adjudication. After hearing upon the application for confirmation of such report, the matter was resubmitted to the special master to take the testimony of the alleged bankrupt. The master was also directed to receive certain documentary evidence rejected upon the hearing theretofore had before him. The special master has again reported his findings of fact and conclusions of law in and by which he sustains the jurisdiction of this court, and overrules certain exceptions taken on behalf of the aforesaid creditors. Motion is now made to confirm this report of the special master.

As heretofore appears, the question for determination is whether the petitioner had a place of business within this district, for and during the period provided by law. There is no definite rule by which it can be determined what constitutes a place of business or which determines whether a place of business is the "principal place of business." It is clear in the light of the language of the Bankruptcy Act (section 2 [11 U.S.C.A. § 11]) and the decisions of the court that in order to constitute a "principal place of business" it is not necessary that one be continuously active in business in any district during the greater portion of six months preceding the filing of the petition. It is clear from the decisions of the courts that a "principal place of business" is not necessarily determined by the volume of business carried on. It is essential that it be made to appear that a petitioner has some place of business which is shown by his acts to have been regarded as a place of business and as "his principal place of business," when compared with business transacted by him in other locations.

Each case necessarily is sui generis. It is obvious that what constitutes a principal place of business in one instance will not be disclosed as the exact counterpart in another. Numerous cases have been called to the attention of this court where-

in the question involved here has been considered. These include Guanacevi Tunnel Co. (C.C.A.) 201 F. 316, 319; In re American Bond & Mortgage Co., Inc. (C. C.A.) 61 F.(2d) 875; In re Knox (C.C.A.) 11 F.(2d) 743, 745; In re Lipphart (D.C.) 201 F. 103; In re Price (D.C.) 231 F. 1001; In re Little, Fed.Cas. No. 8,391, S.D. N.Y., 1868.

In Guanacevi Tunnel Co., supra, the charter of the company provided that its principal place of business was Phœnix, Ariz. Its business had been conducted at 55 Liberty street, New York City. Its office there had been discontinued. The directors met at this prior office and directed and authorized filing of the petition. Said the court: "It is not necessary that the company should have actually transacted much, or even any, business at 55 Liberty street during the period fixed by the act. The question is, Where was its principal place of business? Its business was small and irregular, and it may have transacted little or none, but if it had any principal place of business at all, it was there." In re·Knox, supra, a bankrupt was domiciled in Georgia and was engaged in dairying in a partnership there. He had a desk space in Chattanooga, Tenn., and from there managed part of the partnership business, and also carried on his personal business. The court held the principal place of business was in Chattanooga. Said the court in part: "We think the fact that he transacted at the Chattanooga office firm business to the extent stated, and in connection with his personal business, does not appreciably weaken the claim that this office was his principal place of business."

In Re American Bond & Mortgage Co., Inc. (C.C.A.) 61 F.(2d) 875, 878, the court said: "There is no requirement in the act that any certain amount of business must be transacted, but the place where the business of the corporation remaining in its hands, however great, however insignificant, is transacted shall be within the district. Obviously the element that Congress had in mind in prescribing the terms, the conditions upon which jurisdiction might rest, was not the volume of business transacted, but the locus at which such corporate business should be transacted should be located." In Re Lipphart (D.C.) 201 F. 103, 105, the question was whether the bankrupt, who was a clerk, had no "place of business," and therefore should have filed his petition where he resided or had his domicile. It was said in that case: "It seems to me that it was intended, among other things, by the Bankruptcy Law that these proceedings should, as far as practicable, be carried on in the jurisdiction most convenient to all concerned." In Re Price (D.C.) 231 F. 1001, it was held that a traveling salesman whose only compensation was commissions on sales had no "place of business" so as to give jurisdiction of his petition in a district in which he did not reside. In this case, as In re Lipphart, supra, petitioner had no actual place where he conducted his own business. The business in the district where the petition was filed was for another and at or out of the place of business of another. In Continental Coal Corporation v. Roszelle Bros. (C.C.A.) 242 F. 243, 246, where the question was whether the principal place of business was where it operated large properties or where it had its executive offices and carried on its management, said the court, in part: "But we think the place where the principal office is located is not necessarily the place where the principal business is carried on. Such may or may not be the case. * * * All the authorities recognize * * * that the question as to the place where the bankrupt carried on its principal business is purely one of fact." Many other cases bearing on the question here have been examined. The conclusion to be drawn from them as a whole is that the decision in each case depends upon its own peculiar facts; that the petitioner must engage in some active business of a distinct character or type; that the test is not the volume of business, but the fact that there was some business of the character or type stated.

It is undisputed that for a number of years immediately prior to the forepart of 1932 the alleged bankrupt had continuously engaged in an active business in Buffalo, in this district; that during that time he maintained an office in the particular location where it is claimed it continued until the adjudication herein. In 1932 he removed from this district and has not had or been domiciled here since such removal. He resided or was domiciled in the state of Nevada a sufficient length of time to entitle him to bring an action for divorce. He has remained at various other places for varying periods of time since 1932, but in none has he remained long enough to gain a resi-

956

dence. Since he left here, he has done some writing, including, it appears, a book which was published. Otherwise than engaging in this work he has had no active occupation.

The bankrupt had been a man with considerable financial resources. He had been engaged in projects involving properties of supposedly considerable value. In 1931 he was involved financially. Adjustment of his personal affairs and those of the company with which he was connected was being conducted in this district in 1931. These adjustments and certain of their aspects continued from that time to the date of the adjudication herein. His attorney, located at the bankrupt's alleged place of business herein, in or about 1932 was given power of attorney and has acted in pursuance thereof in numerous business matters for the bankrupt from the time of the adjudication. These transactions through this power of attorney included arrangements for the renewal of notes; adjustment of loans and premiums on a large insurance; and settlement with tradesmen and other creditors of the bankrupt. While the bankrupt was not present, many transactions of the nature described and others were carried on by bankrupt's attorney at bankrupt's alleged place of business. Various notes of the bankrupt, including the notes of the aforesaid creditors, were made payable at the aforesaid location. The bankrupt had a bank account in Buffalo and statements of bankrupt's loans and interest charges were rendered to this Buffalo address. Bankrupt filed his income tax return in 1933 under the Buffalo address. A large amount of business mail was directed to the bankrupt at the location here. The attempt cannot be made to give a résumé of all of the testimony going to show the business activities by the bankrupt or on his behalf in this district down to the time of the filing of the petition. Bankrupt had no other place for the regular transaction of business. It seems to me that no other conclusion can be drawn from the testimony than that bankrupt's principal place of business was in the city of Buffalo, N.

Y., for the greater portion of six months preceding the filing of the petition in bankruptcy herein.

There are other factors which are rightly taken into consideration in arriving at a decision. The claims of creditors as scheduled aggregate upwards of $200,000. These claims were for the most part contracted in this district. All, or practically all, of the creditors, save the two objecting creditors herein, reside in the district. It appears that the bankrupt has a considerable estate which will be distributable among his creditors and that such estate is entirely within the district. It is apparent that most of the creditors will be convenienced by the administration of the bankrupt's estate in this district. It is obvious that the reason why the statute fixes a definite period of residence, domicile, or place of business as a preliminary requisite for the filing of a petition was that the creditors ordinarily would be better convenienced. Without such limitation a debtor could apply in any district however distant from the location of creditors and creditors be compelled to appear in foreign jurisdiction to assert their rights. No such situation is presented here.

A question has been raised as to whether the burden of the proof rests upon the alleged bankrupt or the contesting creditors. In Re Guanacevi Tunnel Co. (C.C.A.) 201 F. 316, 319, it is said that the filing of the petition "creates a prima facie case which leaves the burden of evidence to meet it upon the creditor who seeks to vacate the adjudication." To the same effect is In re Lone Star Shipbuilding Co. (C.C.A.) 6 F.(2d) 192. On the other hand, the holding in Re Waxelbaum (D.C.) 97 F. 562, and in Re Scott (D.C.) 111 F. 144, 145, seems to be to the contrary. It is not necessary here to express my opinion on this question. It is sufficient to say that the bankrupt has sustained any burden cast upon him to show that his principal place of business was in this district.

The report of the master is in all respects affirmed.