## In re FORTNUM & MASON, Inc.

### MAGILL et al. v. STARKEY.*

#### No. 475.

Circuit Court of Appeals, Second Circuit.

Aug. 10, 1936.

House, Holthusen & Pinkham, of New York City (Victor House and Spencer Pinkham, both of New York City, of counsel), for appellants.

Stern & McGivney, of New York City (Walter T. Stern and Arthur A. McGivney, both of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This petition was brought by three preferred stockholders of Fortnum & Mason, Inc., a New York corporation whose principal place of business was in the city of New York, which had been adjudicated a bankrupt on its voluntary petition. It was verified only by an attorney who acted wholly upon information and belief. It was answered by the trustee in bankruptcy who, on information and belief, partly admitted and partly denied the allegations. The relief sought was leave to intervene generally in the voluntary bankruptcy proceedings of the above-mentioned corporation and for an order vacating the adjudication. The petition was denied, and we granted leave to appeal.

As the appeal comes here under the provisions of section 24b, Bankr.Act, as amended (11 U.S.C.A. § 47 (b), our review is limited to questions of law. In re Lone Star Shipbuilding Co., 6 F.(2d) 192 (C.C. A.2); Cintron v. Barletta Trading Co. (C. C.A.) 70 F.(2d) 1005. The cause has been argued as though the order from which the appeal was allowed dismissed the petition, but upon examination we find that at the hearing, which was wholly on petition and answer, the affirmative relief sought was denied and a previous stay of the distribution of the bankrupt's assets vacated. No evidence in support of the petition was offered.

It appears that Fortnum & Mason, Inc., was organized in February, 1931, primarily to act as a selling agency for a well-known English Company, Fortnum & Mason, Ltd., of London. As of the date the voluntary petition in bankruptcy was filed, it had outstanding 134,000 shares of 7 per cent. cumulative preferred, nonvoting stock of a par value of $5 of which the petitioners altogether own 600 shares, and 154,600 shares of no par value common stock which alone had the voting power and of which the petitioners own in all 64 shares. Fortnum & Mason, Ltd., which will be called the English Company, guaranteed the payment of dividends on the bankrupt's preferred stock and had advanced large sums of money in carrying out its guarantee up to the time the voluntary petition was filed; had sublet to the bankrupt premises on Madison avenue, New York City, of which it was the lessee; and had entered into a contract with the bankrupt giving to it the exclusive right for fifty years, with certain provisions for an extension of the term, to sell both at wholesale and retail in the United States all of the merchandise manufactured or dealt in by the English Company. In consideration for this the bankrupt had paid the English Company $100,000 in cash; had allotted to it 101,000 shares of its common stock; and had repaid certain rent which the English Company had paid for the premises on Madison. The money which the bankrupt used in so doing and which it had for use in its business at the start had been obtained through the sale of its shares to the public made with the assistance of the English Company. The bankrupt's business was not successful, and its board of directors in due course authorized the filing of a voluntary petition in bankruptcy which was filed in the court below on March 2, 1936, and adjudication was had the same day. A trustee, elected on March 13, 1936, took over the assets which consisted mainly of the goods and stock on hand and sold practically all of them in proceeding to wind up the business through liquidation. And then the petitioners filed the petition, verified April 30, 1936, to intervene and have the adjudication vacated alleging through their attorney in substance that the English Company, which by virtue of its ownership at all times of more than a majority of the bankrupt's common shares had the control of the bankrupt, had caused the bankrupt, though it was in fact solvent, to file its voluntary petition in bankruptcy for the fraudulent purpose of giving the English Company cause to cancel the agency agreement and thereby enrich itself at the expense of the bankrupt and its stockholders; and that the English Company had in various ways made improper use of its control of the bankrupt to deplete its working capital; some of which were the overcharging it for goods, for rent, and for the assets of British Boots, Inc., an American corporation the English Company had organized and which it had unloaded upon the bankrupt.

The solvency of the bankrupt at the time the petition was filed was denied in the an-

swer as were all the allegations tending to show fraudulently used control by the English Company.

The agency agreement provided for cancellation forthwith by either party by notice in writing should the other become insolvent or go into liquidation (with one exception not here material) "or have a receiver of its undertaking or any of its assets appointed." It also provided for such cancellation if either should, "(b) Commit a breach of this Agreement and shall not within thirty days after notice in writing shall have been given calling attention to such breach remedy the same in so far as the breach is capable of being remedied or tender reasonable amends for any breach which is not so capable of remedy."

The sole creditor scheduled was the English Company, to which it was alleged that a large amount was due. After that an additional claim was filed by the owner of the Madison avenue premises, a subsidiary of the English Company.

The appellants alleged inter alia that:

"28. The English Company has by abuse of the processes of this Court and in fraud of the rights of the preferred and other public shareholders of the American Company, including the petitioners, caused the American Company's business to be liquidated, its assets dissipated and its goodwill destroyed, all for the benefit of the English Company, and it proposes now as sole creditor of the American Company to effect payment to itself of the entire amounts—after administration expenses—realized by the forced liquidation of the American Company which it has improperly caused and engineered as aforesaid."

"30. The premises in which the American Company did business have been closed, the stock of merchandise thereat has been disposed of and it is the understanding of the petitioners that most of the personal property of the estate has been liquidated and that little remains to be done except a distribution of the assets * * *."

Regardless of all else, the record in this case as presented shows that the District Judge who made the order appealed from had before him sufficient to show that the bankrupt's debts were greatly in excess of the fair value of all its assets at the time it filed its petition in bankruptcy. Indeed, the balance sheet as of January 25, 1936, which the appellants attached to their petition, shows liabilities to the amount of $416,798.31 against assets built up to $603,397.17 by including the following three items alleged by the trustee in his answer to be worthless: Lease and Building, $120,643.77; Selling Agency Concession, $114,245.80; and Organization, $2,319.79—making a total of $237,209.36. The bankrupt, it was alleged, had only a sublease of the building from month to month and that "was subject to termination by the lessor at any time upon 90 days' prior written notice and by the lessee at any time upon 30 days' prior written notice." It was also alleged that the bankrupt had broken the agency contract and "that at no time since July 31, 1934 was the American Company in a financial position to enable it to remedy its long-continued breaches of said Agency Agreement arising from its failure under the terms thereof to make payment to said English Company of the purchase prices and commissions for merchandise purchased thereunder." And it was alleged that the claimed asset for organization was for expenses which "had no value which was realizable in whole or in part upon the sale of the assets of the American Company in liquidation or otherwise." The hearing being upon petition and answer, the petitioners failed to support their prayer for affirmative relief by showing solvency of the bankrupt. Moreover, at the time the appellants filed their petition it appears by their own allegations that the bankrupt's assets had for the most part been sold and that "little remains to be done except a distribution of the assets."

And so when the order below was made the court was faced with a situation where adjudication had been had upon a voluntary petition in bankruptcy which had been duly authorized, and filed by an insolvent corporation in the court having jurisdiction; and liquidation of its assets had been practically completed when the appellants filed their petition to intervene and set the adjudication aside. Whether or not the petition should be granted was to be decided in the sound discretion of the court. Banco Commercial De Puerto Rico v. Hunter Benn & Company (C.C.A.) 31 F.(2d) 921. It is apparent that the appellants did not establish facts entitling them to affirmative relief and that there was no abuse of discretion in denying their petition. In re De Lue (C.C.A.) 295 F. 130.

Order affirmed.